Merrimack, }
April 3, 1917. }

EDWARD N. COGSWELL, *Ex'r*, *v.* BOSTON & MAINE RAILROAD.

Equity will not set aside a release or other agreement because of mutual ignorance of a fact, which if known would have prevented the making of the agreement or altered its terms, if such fact be merely collateral to and not part of the subject matter of the agreement.

No action is given to an executor by P. S., c. 191, ss. 8–12 upon a cause of action which has been extinguished by the testator's release.

BILL IN EQUITY, in aid of an action at law. The plaintiff brought action against the defendants, claiming the death of his testator, Josiah W. Emery, was occasioned by the defendants' negligence. The defendants pleaded the general issue with a brief statement setting up a release, under seal, of all claims against the defendants in consequence of the accident and injury referred to in the plaintiff's declaration and executed by the plaintiff's testator, December 26, 1913. Thereupon the plaintiff brought this bill to have the release set aside upon the ground that it was executed upon a mutual mistake as to the identity, character and extent of the injuries

which had been received by Emery and in entire ignorance of the principal injuries which resulted in his death and on account of which the action was brought.

The defendants, answered denying the allegations, of the bill. The plaintiff then claimed in an amendment to the bill that the release executed by Emery was not a bar to an action brought by his executor, under P. S., c. 191, ss. 8–13, as amended by Laws 1913, c. 201, for damages for the death resulting from the injury.

Trial by the court upon the issues raised by the bill, answer and amended bill, who found the following facts: December 24, 1913, Josiah W. Emery was struck upon a grade crossing by the defendants' motor section car and thrown out of the sleigh in which he was riding. The only injury of which he complained was a lame shoulder, side and back. He drove home and then drove to Henniker village, a mile and a half, for liniment and alcohol, which his wife applied for several days. There was a large black and blue spot below his right shoulder and another one in the small of his back above his right hip. The deceased did his farm work as usual the day of the accident and the following day. On December 26, as he was driving to Henniker, he met the claim-agent of the railroad who drove with him to the railroad station, and on the way talked about a settlement. The only claim of personal injury then made by Emery was a little lameness of the shoulder. Twenty-five dollars was agreed upon to settle the claim for both personal and property damage. A release was drawn up which was read by Mr. Emery, was read over to him and was fully understood by him. There was no fraud.

Some time in January, Mr. Emery began to be troubled with shortness of breath. About the middle of February, he gave up all work and died March 1, 1914. February 16, he first consulted a doctor, who thought him afflicted with Bright's disease, a diagnosis which was subsequently confirmed. The plaintiff claimed that Bright's disease resulted from the injury. From the medical testimony the court found that Emery's death was caused by chronic Bright's disease, which he must have had for a considerable time before the accident and that the accident could in no way be regarded as the cause of the disease though the effect of the fall was to accelerate its course and to hasten death.

Neither Emery nor the claim-agent had knowledge of Emery's bodily condition which rendered the results of the accident more serious to him than they might otherwise have been. The claim-

agent, for the purpose of avoiding litigation, intended to settle once and for all every claim which Emery had or might have in the future growing out of this accident. The release so stated and it was so understood by Mr. Emery. The railroad intended to buy its peace.

The court ruled that these facts present a case where a contract was fairly entered into by both parties and where the terms of the contract were themselves fair, in view of the facts which the parties knew at the time, but a case where both parties contracted in ignorance of an important fact which, if known, would have materially altered the terms of the agreement, and found that this is not a case where the parties "negotiated upon a mutual understanding that it was doubtful who was to blame for the accident and what the plaintiff's injuries might turn out to be," and where "both parties intended to take the risk of loss as it might thereafter appear"; but that it is rather a case where without reference to the question of liability the amount paid depended upon, and was intended "in some degree to be commensurate with the existing injuries," and made the following orders: (1) That the prayer of the amended bill be denied as matter of law, and the plaintiff excepted; (2) That the release be set aside upon the ground that it was executed by reason of a mutual mistake of fact, and the defendants excepted.

The defendants also excepted to the denial of their motion for the dismissal of the bill made at the close of all the evidence, and to the above findings as to the character of the case, upon the ground that they were unsupported by the evidence and were inconsistent with prior special findings. Transferred from the October term, 1915, of the superior court by *Branch,* J.

*Joseph S. Matthews* and *Martin & Howe* (*Mr. Matthews* and *Mr. Howe* orally), for the plaintiff.

*Streeter, Demond, Woodworth & Sulloway* (*Mr. Demond* and *Mr. Woodworth* orally), for the defendants.

Parsons, C. J. The plaintiff's testator, Emery, was thrown from his sleigh December 24, 1913, by a collision with defendants' motor section car upon a highway grade crossing of the defendants' road. He died March 1, 1914. The plaintiff brought suit against the defendants claiming the death was caused by the collision,

which was alleged to have been due to the defendants' negligence. In answer, the defendants pleaded a release under seal executed two days after the accident. This purported to be a release and discharge of all causes of action arising out of the accident. Thereupon the plaintiff in accordance with the procedure suggested in *McIsaac* v. *McMurray*, 77 N. H. 466, brought this bill to set the release aside. The bill alleges that the injuries which resulted in Emery's death were unknown to both parties when the settlement evidenced by the release was made and that the contract of settlement then agreed upon was only intended as compensation for the damage to Emery's sleigh and the only personal injury of which Emery then complained, "a little lameness in the shoulder." The allegations are sufficient to authorize a decree for the plaintiff within the rules laid down in *McIsaac* v. *McMurray* in which the subject of reformation or rescission for mistake is fully considered. It was there pointed out that a release under seal was the written evidence of a contract made by the parties and that if by mistake in a material matter the documentary evidence failed to state accurately the intention of the parties,—*i. e.* the contract,—equity had power in a proper case to give relief. In that case, which was also a suit for personal damages caused by negligence, it was claimed that the real contract between the parties was not for the settlement of all controversy between them in reference to the defendants' liability for the plaintiff's injuries but was merely to give the plaintiff compensation for certain known injuries; and that at that time the plaintiff had received a serious injury, a broken hip, of which injury both parties were in ignorance at the time of the contract of settlement. It was held that these facts, if so proved as to overcome the weight of the written document as evidence, would authorize the rescinding of the release so far as it was in conflict with the contract of the parties.

The mistake claimed being mutual ignorance, at the time of the contract, of the serious injury to the plaintiff's hip, it was said, "upon these facts, the question arises whether the mistake related to a matter that was material to the contract of settlement. The fact that the parties were justifiably ignorant of the serious injury to the plaintiff's hip does not alone show that the mistake was in respect to a material matter. Whether it was or not depends upon the intention of the parties in making the contract. If their purpose was to terminate all disputes and litigation between them in reference to the defendant's liability for negligence in causing the plain-

tiff's injuries . . . the mistake as to the extent of his injuries would be immaterial." *McIsaac* v. *McMurray*, 77 N. H. 466, 472. The question in that case was considered upon the pleadings and it is clearly stated that the matter to be determined by proof was the actual contract, what did the parties intend, what was the proposition upon which the minds of the parties met? Was it the release of the defendant from all further liability to answer for the consequences of the accident or the amount of compensation that ought to be paid for a certain known injury?

In this case the plaintiff failed upon hearing to establish a tangible, independent injury, existing at the time of the settlement, of which the parties were ignorant. The fact found of which the parties were ignorant was that at the time of the accident Emery was afflicted with chronic Bright's disease which he had had for some time before. This disease caused his death. The disease was not caused by the accident but the effect of the fall was to accelerate the course of the disease and thus to hasten death. The settlement which the release was offered to prove was made between Emery and the defendants' claim agent. It is found that the claim agent for the purpose of avoiding litigation intended to settle once and for all every claim which Emery had or might have in the future growing out of this accident. The release so stated. It was so understood by Emery. The railroad intended to buy its peace. This was an offer of a certain sum in full of all claims which could arise out of the accident, knowingly accepted without fraud or compulsion by the party to whom the offer was made. Emery's acceptance of the offer, which he understood, completed the contract. *McDaniels* v. *Bank*, 29 Vt. 230, 235. The contract proved by parol is the precise contract proved by the written evidence,—the release pleaded. There is no evidence to support the conclusion that the railroad intended to pay $25 in compensation for the lame shoulder and fractured sleigh, leaving open the question of liability to make compensation for other injury or other results than temporary lameness or that Emery so understood. The conclusion that such was the contract is not supported by evidentiary findings which establish a different contract.

Upon these facts the trial court ruled that the facts presented a case where a contract was fairly entered into by both parties, and where the terms of the contract were themselves fair in view of the facts which the parties knew at the time, but a case where both parties contracted in ignorance of an important fact, which,

if it had been known, would have altered the terms of the agreement.

But ignorance of a fact which if known would have prevented the making or altered the terms of an agreement does not of itself authorize the rescission of an agreement. In this case both parties knew that Emery had sustained a fall necessarily causing more or less shock to his system. What the result would be, they could not know. If they had known of his bodily condition, they might with the aid of medical advice have anticipated more serious consequences from the shock than they would have anticipated in the case of a similar person in good health. Whether their ignorance related to a past or existing fact or to a future uncertain result need not be determined. *McIsaac* v. *McMurray, supra,* 475; see L. R. A. 1916 B., 769 notes *pp.* 777, 779.

The most favorable view of the findings for the plaintiff is that, unknown to the parties, Emery at the time of the settlement had received from the accident a shock to his system, liable to be followed by serious results. Conceding for the purpose of the discussion that this constitutes an additional injury of which the parties were justifiably ignorant at the time the contract was made, does such ignorance authorize the cancellation of the contract? The contract may not be disturbed unless the fact of which the parties were ignorant was "a material ingredient in the contract of the parties and disappoints their intention by a mutual error. But where each party is equally innocent, and there is no concealment of facts, which the other party has a right to know, and no surprise or imposition exists, the mistake or ignorance, whether mutual or unilateral, is treated as laying no foundation for equitable interference. It is strictly *damnum absque injuria.*" 1 Story Eq. *s.* 151. *McIsaac* v. *McMurray, supra,* 473.

"There are many extrinsic facts surrounding every business transaction which have an important bearing and influence upon its results. Some of them are generally unknown to one or both of the parties, and if known might have prevented the transaction. In such cases, if a court of equity could intervene and grant relief, because a party was mistaken as to such a fact which would have prevented him from entering into the transaction if he had known the truth, there would be such uncertainty and instability in contracts as to lead to much embarrassment. As to all such facts, a party must rely upon his own circumspection, examination and inquiry; and if not imposed upon or defrauded, he must be held to

his contracts." *Dambmann* v. *Schulting*, 75 N. Y. 55, 64. "The fact concerning which the mistake is made must be material to the transaction, affecting its substance, and not merely its incidents. . . . If a mistake is made by one or both parties in reference to some fact which, though connected with the transaction, is merely incidental, and not a part of the very subject-matter, or essential to any of its terms, . . . the mistake will not be ground for any relief affirmative or defensive." 2 Pom. Eq. Jur. s. 856. "The fact involved in the mistake must have been as to a material part of the contract . . . an intrinsic fact; that is, not merely material in the sense that it might have had weight if known, but that its existence or non existence was intrinsic to the transaction,—one of the things actually contracted about." *Kowalke* v. *Electric Co.*, 103 Wis. 472, 477,—74 Am. St. Rep. 877; see Kerr on Fraud and Mistake, *p.* 433; *Laidlaw* v. *Organ*, 2 Wheat. 178; *Hecht* v. *Batcheller*, 147 Mass. 335, 338.

Whether the fact now in question is material, intrinsic, a part of the subject matter, is answered by the finding what the contract was. If the contract was to make compensation to Emery for injuries received in the accident, the unknown injury was a material part of the contract. In such case the subject matter was the injuries received. This position was well put by counsel in argument in the claim that what Emery sold was a lame shoulder not a death-hastening shock. The same argument was made in *McIsaac* v. *McMurray*, that the sale was of certain bruises not of a broken hip. But the fact as found is that the subject matter of the contract was the avoidance of future litigation. The offer to pay a certain sum to settle once and for all every claim growing out of the accident, knowingly accepted by Emery, was the contract. Emery having accepted the money tendered on such conditions is bound by his acceptance of the terms. It is found as a fact that the railroad intended to buy its peace. The subject matter of the contract, that which the parties bought and sold, using the language of counsel, was not Emery's injuries but the railroad's peace. The extent of Emery's injury did not affect the subject matter of the contract.

It may be the amount paid or to be paid was determined with reference to the injuries understood to have been received but the manner in which the compensation considered sufficient was arrived at is not necessarily part of the subject matter. Doubtless the parties although intending to settle the whole matter might have made their settlement dependent upon the receipt by Emery of

adequate compensation for past and future damage resulting from the injury, but the explicit finding that the subject of the contract was the avoidance of all future litigation renders impossible such interpretation of the contract in this case.

The subsequent general findings or rulings made by the court are inconsistent with the special finding what the contract was. The exceptions thereto, to the denial of the motion to dismiss and to the decree setting aside the release are sustained.

There was no error in the order denying the prayer of the amended bill. The claim therein set up that the release if valid against a suit by Emery is not an answer to the suit by his executor claiming damages for an injury resulting in death, if sound, is an answer at law to the plea and presents no ground for equitable intervention.

As to the question of law which has been argued, it seems sufficient to say that Emery's cause of action having been discharged before his death, none was in existence at his death upon which his executor can maintain a suit. P. S., c., 191, ss. 8–12, provides for the survival of existing causes of action in case of the death of one of the parties. No action is given the executor upon a cause which has been extinguished by judgment or contract in the testator's lifetime. See *Louisville R'y* v. *Taylor, Adm'r,* 27 L. R. A. (N. s.) 176 and notes. The plaintiff's exception is overruled.

*Bill dismissed.*

All concurred.