GOLD HUNTER MINING & SMELTING CO. v. BOWDEN.

(Circuit Court of Appeals, Ninth Circuit. June 3, 1918.)

No. 3122.

1. MASTER AND SERVANT ⬤═289(15)—ACTION FOR INJURY TO SERVANT—ASSUMPTION OF RISK.

A miner, injured by reason of the breaking of a drill which had previously been broken and welded, did not as matter of law assume the risk, if the breaking was due to improper welding; that being a question for the jury.

2. PLEADING ⬤═291(2)—VERIFICATION—EFFECT OF FAILURE TO VERIFY.

Under Rev. Codes Idaho, § 4201, by which the "genuineness and due execution" of an instrument pleaded in defense is deemed admitted, unless denied by an affidavit filed, the failure to file such affidavit does not preclude plaintiff from denying the effectiveness of a release interposed as a defense.

3. RELEASE ⬤═34—CONSTRUCTION AND EFFECT—RELEASE OF DAMAGES FOR PERSONAL INJURY.

A release by an employé of claims for damages, because of personal injuries then believed by the parties to be of minor character, cannot be construed to cover other and very serious injuries, which afterwards developed from the same cause.

In Error to the District Court of the United States for the Northern Division of the District of Idaho; Frank S. Dietrich, Judge.

Action at law by William M. Bowden against the Gold Hunter Mining & Smelting Company. Judgment for plaintiff, and defendant brings error. Affirmed.

James A. Wayne, of Wallace, Idaho, for plaintiff in error.

Robertson & Miller and F. C. Highsmith, all of Spokane, Wash., for defendant in error.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

HUNT, Circuit Judge. Bowden recovered damages against his employer, the Gold Hunter Mining & Smelting Company, for personal injuries suffered on September 4, 1915, while operating a drill in a mine belonging to plaintiff. The mining company brought writ of error.

---

⬤═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Bowden alleged that the company knew that it was unsafe to use steel which had been welded together after being broken, because the steel in mining operations was liable to break again at the place where it had been welded; that at the time of the accident he took a steel drill about 3½ feet long and put it in the machine, believing the steel to be sufficiently strong for the purpose for which it was furnished, but that the steel so taken had been broken, and thereafter had been carelessly welded together in a defective manner, and was not strong or fit for the purpose of being used as a drill, but was dangerous and unsafe, as the defendant company well knew; that he put the steel in the drill without knowing of the defective condition of the steel, but that when the machine was operated the steel, because of its defective and welded condition, broke at the point where it had been welded, and caused the machine to move forward suddenly, throwing plaintiff upon a muck pile and injuring him seriously. The company defendant admitted that welded steel had been furnished, but alleged that such steel was as safe as steel which had not been welded, and also pleaded contributory negligence, assumption of risk, and that after the injuries to the plaintiff there had been a settlement, and that plaintiff had given to defendant a written release, which was a complete bar to the action. The release, dated December 23, 1915, was in consideration of $200, and released and discharged the mining company of and from all claims, demands, damages, actions, or causes of action on account of injuries resulting or to result from accidents which occurred on or about July 9, 1915, on account of a strained back and by reason of an accident having occurred on September 4, 1915, when he bruised his scrotum "by falling by reason of the breaking of a defective drill steel, and of and from all claims or demands whatsoever in law or in equity" which Bowden or his heirs or assigns "can, shall, or may have by reason of any matter, cause, or thing whatsoever" prior to the date of the release.

Bowden, who was an experienced underground mine worker, testified to the effect that he was drilling in a stope where there was about 16 or 18 feet of muck, leaving just room enough to stand on the edge and drill; that he was drilling a cut hole, and started the steel in the drill, but that after a revolution or two it broke in the center, the machine gave him a kind of lurch, his feet slipped, he struck on a boulder, and rolled down to the floor on the chute about 18 feet; that after he was injured he dragged his machine out, and the piece of steel was still in the end of the machine, and had been broken at a kind of an angle in the weld where the steel had been welded; that the weld was not completely together where it had broken from the jar, and that one end ran down probably about half or three-quarters of an inch into the weld; that he never had seen steel in an unwelded drill break in the middle, or right in the weld; that he thought the steel was sound, although he could have noticed the weld, but that he paid no particular attention to it at the time, but picked it up and used it; that the steel was delivered for the different machines after inspection by the tool sharpeners; that he had had steel drills which broke in use, some having broken in the chuck, and some right ahead of the

weld, either half an inch above or half an inch behind; that upon occasions notice had been given of the fact that the steels that had been welded were breaking; that he had been told by the blacksmith that steel after it was welded would be weak, probably not right in the temper, but an inch or so ahead in the steel. Men experienced in welding steel drills testified at length concerning the manner and effect of heating and welding, and among other things said that a steel drill, if welded properly, will seldom break right in the weld.

[1] It is argued that Bowden assumed the risk of using welded steel, and that in the light of his testimony he understood and appreciated the risk of using a welded steel drill. The essential question, however, in respect to the drill, was not whether it was welded, but whether it had been welded in a defective and careless way, so as to make it unsuitable and unsafe for drill uses. The District Court pointed this issue out very clearly, by explicitly charging the jury that, inasmuch as Bowden well knew of the uses of welded steel, he assumed whatever risk was necessarily incident to the use of skillfully welded drills, and therefore could not recover for the alleged negligence of the company in furnishing welded steel.

But, in accord with the pleading of the plaintiff, the court further charged that there was an issue upon the question whether the piece of steel which broke was unskillfully welded, and told the jury that if the plaintiff did not know that the steel was defectively welded, and if by the exercise of reasonable care the inspectors for the mining company should have discovered that the welded joint was weak, in that the weld was defective, then negligence could be attributed to the defendant company, and inquiry could be made whether or not the accident was the result of the weakness in the steel.

We find no error in the submission of the questions referred to to the jury, or in the law as given by the court, particularly when it is observed that one of the witnesses called as an expert by the mining company testified that when steel breaks in the weld by his observation it is because of a poor weld.

The plaintiff in error contends that Bowden was guilty of contributory negligence; but we think the case called for the submission of the issue to the jury, and, as no exceptions to the charge upon contributory negligence were preserved by plaintiff in error, the point need not be dwelt upon.

[2] We now come to the matter of the release. Plaintiff in error cites section 4201 of the Idaho Statutes, which provides that:

"When the defense to an action is founded on a written instrument, and a copy thereof is contained in the answer, or is annexed thereto, the genuineness and due execution of such instrument are deemed admitted, unless the plaintiff file with the clerk, within ten days after receiving a copy of the answer, an affidavit denying the same, and serve a copy thereof on the defendant"

—and argues that Bowden never denied the execution or delivery of the release, and never tendered back the consideration paid therefor. But the effect of failure to file an affidavit under the statute cited is merely to admit the genuineness and due execution of the release, and not to preclude the plaintiff from taking a position in avoidance of the

effect of the contract, not inconsistent with the admission of genuineness and due execution. Austin v. Brown Bros., 30 Idaho, 167, 164 Pac. 95; Cordano v. Wright, 159 Cal. 610, 115 Pac. 227, Ann. Cas. 1912C, 1044. Replication denying the effect of the release was not required under the Idaho practice, which under section 4126 limits pleadings on the part of the plaintiff to complaint and demurrer to the answer. The effect, as asserted by the defendant's pleading, was deemed denied.

[3] In our opinion the release itself was properly construed by the District Court in ruling that it was valid as to injuries done to the scrotum and the earlier injury to the back, but did not go to the loss of a leg and other severe injuries, not connected with the injury to the back or to the scrotum, which plaintiff below suffered as the direct result of the accident, and which evidently developed after the release was executed. Texas & Pac. R. Co. v. Dashiell, 198 U. S. 521, 25 Sup. Ct. 737, 49 L. Ed. 1150. The evidence shows that at the request of the physician plaintiff met the agent of the indemnity insurance company at the office of the physician. The agent asked the physician if Bowden was in a serious condition. The doctor replied that the scrotum was badly bruised, and possibly he would have to take out a vein or two, that $200 would meet all the bills, and that plaintiff would be able to go to work in three weeks. After some discussion, plaintiff signed the release, and the draft was made out. Plaintiff testified distinctly that he did not know at that time that he was settling for the loss of the leg, or for the injuries to his arm, and only claimed damages for such injuries by supplemental complaint filed May 3, 1916.

It would be a very strained construction to hold that plaintiff, a healthy man, in the prime of life, dependent upon a calling which requires unusual physical strength, intended to accept $200 (all of which was paid by the indemnity insurance company to the hospital and physician, for attention to injuries received before the serious injuries to the leg and arm were developed) as full compensation for the permanently helpless condition in which he evidently is. A fair construction of the evidence is that the release was made under the belief by both parties that there were no injuries other than those specified, and they were deemed not serious.

The release having no relation to the issues as reduced and submitted to the jury for consideration, the point that there should have been a tender back became irrelevant.

Finding none of the assignments well taken, the judgment is affirmed.