### PICKERING LUMBER CO. et al. v. CAMPBELL et al.

No. 21025.  Opinion Filed Jan. 27, 1931.

Eugene Jordan, for petitioners.

J. Berry King, Atty. Gen., Robert D. Crowe, Asst. Atty. Gen., and B. A. Hamilton, for respondents.

CULLISON, J.  This is an original proceeding in this court to review an order and award made by the State Industrial Commission December 11, 1929, in favor of respondent, James A. Campbell, hereinafter called the claimant, and against the Pickering Lumber Company and Consolidated Underwriters, hereinafter called petitioners.

The facts out of which this controversy arose are these:

The claimant, while employed by petitioner Pickering Lumber Company, was injured during the course of such employment on October 27, 1928. Claimant, a laborer, together with five or six other men, was engaged in loading a rig timber on a skid, when the skid upon which claimant was standing flew up and threw claimant to the ground in such a manner that claimant fell to the ground on his head and hands with his arms doubled up, which fall resulted in a sprain to claimant's right wrist and injured his left arm at the elbow. Claimant was attended by physicians engaged by petitioner lumber company—received local treatment for his injuries—and after four days hospitalization was discharged and shortly thereafter left the employ of the petitioner company and returned to his home at Pawhuska, Okla.

On December 27, 1928, the claimant filed claim for compensation before the Industrial Commission.

The record shows that thereafter, January 31, 1929, claimant and the two petitioners herein entered into a stipulation and receipt, by the terms of which it appears that claimant was temporarily totally disabled by reason of the above accident, from the date of said accident to November 29, 1928, and payment for compensation therefor was made to claimant in the sum of $61.56, which stipulation and receipt was approved by the Industrial Commission on February 8, 1929, and which agreement recited that the nature of the injury sought to be compensated was an "injured wrist."

Thereafter, and on March 16, 1929, claimant filed with the Commission a motion to reopen the case, alleging that the settlement heretofore recited was made under a mistake of fact, in that claimant did not know at the time of signing such stipulation and receipt that the head of the left radius of claimant's arm was fractured by reason of the aforesaid accident.

Evidence was thereafter adduced, at various intervals, before the Commission in support of claimant's motion to reopen the case, at the conclusion of which the petitioners filed demurrers, which were by the Commission overruled.

Thereafter, December 11, 1929, the Commission entered its order holding that the

stipulation and receipt, above referred to, was founded upon mutual mistake of fact and should be set aside; that claimant was disabled from October 27, 1928 (the date of the accident), to July 29, 1929, and awarded claimant compensation for said period of time in the sum of $592.51, less the $61.56 paid claimant under the aforesaid stipulation and receipt, and continued the cause for further hearing to determine the extent of disability beyond July 29, 1929.

From said order the petitioners come to this court on review, assigning as error:

(1) That the Commission erred in finding and holding that the stipulation and receipt was entered into under mutual mistake of facts and setting the same aside.

(2) That the Commission erred in holding claimant did not have any wage earning capacity from October 27, 1928 (the date of the accident), to July 29, 1929, by reason of said injury, and awarding him compensation for such period of time.

### First.

Was the stipulation and receipt heretofore referred to entered into under mutual mistake of fact?

The stipulation and receipt itself shows that the injury sought to be compensated by such agreement was an "injured wrist." No mention whatever is made in said stipulation and receipt as to any injury sustained by claimant to his left elbow.

The evidence shows that at the time of the accident and during the time claimant was receiving treatment in the hospital for his wrist, he experienced pain in his left elbow, but it was considered by the claimant and the doctors as a trivial injury. The testimony of claimant discloses that the attending physician advised him there was nothing seriously wrong with his left elbow and that claimant himself could treat it for soreness by the application of liniments, which claimant did.

The evidence shows that after undergoing hospital treatment for four days, claimant returned to his home in Pawhuska, and lived with his family and assisted in some minor details in the running of a filling station operated by the family.

On January 31, 1929, the claimant and petitioners entered into the aforesaid stipulation and receipt for compensation covering claimant's injured wrist.

That claimant thereafter returned to Seminole the first week in February, 1929, and worked a few hours doing manual labor for a contractor, but was forced to quit work for the reason he had no strength in his left arm.

Claimant again returned to his home, and on February 26, 1929, was examined by Dr. Roscoe Walker, whose testimony discloses that claimant at that time was suffering from a fracture of the left elbow and that from the history of the case the fracture was caused by the injury received by claimant in October, 1928, while in the employ of petitioner lumber company. The doctor further testified that claimant was incapable of performing manual labor, and that it might be from six to eight months before the claimant could perform manual labor.

While the medical testimony is conflicting as to the question of fracture to claimant's left elbow, there is evidence to the effect that the left elbow was fractured and that the fracture was caused by the accidental injury received by claimant on October 28, 1928, arising out of and in the course of his employment with petitioner lumber company.

The evidence further shows that the injury to claimant's left elbow was considered by all as trivial, and that the same was not X-rayed or the fracture discovered until in February, 1929, two or three weeks following the date upon which the aforesaid stipulation and receipt releasing petitioners from further liability was entered into.

The record convinces us that the stipulation and receipt was entered into for the sole purpose of compensating claimant for the known injury to his "wrist," and that the probable existence of a fracture to the claimant's elbow was not within the contemplation of the parties at the time and did not enter into the consideration.

The stipulation and receipt shows that the nature of the injury sought to be compensated by such agreement was an "injured wrist," and the record shows that the parties to the agreement were laboring under a mutual mistake of fact; that both parties were unaware of the fracture to claimant's left elbow; that there was no intention on the part of the parties to settle for anything except the injured wrist, the compensation for which injury was fixed by the parties at temporary total disability for a period of four weeks.

It is well settled that a mutual mistake of fact, as shown by the record herein, will justify rescission of a release from liability for personal injuries.

In St. Louis-San Francisco Ry. Co. v. Cauthen, 112 Okla. 256, 241 Pac. 188 (writ of certiorari denied by United States Su-

preme Court in 270 U. S. 656, 70 L. Ed. 784), the court held:

"A mutual mistake of fact should justify the rescission of a release, executed under the belief that injuries are trivial and temporary, when as a matter of fact they are serious and permanent in their nature, where it appears that the purpose of the release was to compensate for apparent injuries, known injuries, and that serious or permanent injuries were not contemplated by the parties at the time of the execution of the agreement or release, although in its terms the agreement or release is broad enough to cover all injuries resulting from the particular incident."

In 23 R. C. L. 390, quoted with approval in the Cauthen Case, supra, the author announces the following rule:

"As applied to releases, much confusion exists regarding the right of an injured person who has released his claim for personal injuries to avoid the release, either in equity or in an action to recover for the injuries, on the ground of mutual mistake, as to the extent or nature of the injuries. In some cases the court has intended to apply a general rule or principle of law, and decisions thereon result which are arbitrary and unjust in their application to the concrete case presented, and the result has been to sustain a release, although it was clear from the surrounding facts and circumstances, the consideration and the character of the unknown injury, that the purpose of the release was to compensate for known injuries in the contemplation of the parties at that time, and that the probable existence of an unknown serious injury did not enter into consideration."

The petitioners contend that the stipulation and receipt herein is absolutely binding between the parties thereto, and upon the Industrial Commission, and that the Commission had no right to set the same aside upon the showing of mutual mistake of fact and grant claimant further relief.

Section 7294, C. O. S. 1921, as amended by chapter 61, S. L. 1923, provides:

"* * * If the employer and the injured employee shall reach an agreement as to the facts with relation to an injury, for which compensation is claimed under this act, a memorandum of such agreement, in form as prescribed by the Commission, and signed by both the employer and employee, may be immediately filed by the employer with the Commission, and if approved by the Commission, shall, in the absence of fraud, be deemed binding upon the parties thereto, such agreement shall be approved by the Commission only when the terms conform to the provisions of this act. * * *"

An agreement and settlement entered into by and between the employer and employee

and approved by the Industrial Commission, as provided by section 7294, supra, has the same force and effect and is equivalent to an order and award by the Commission, and may be set aside and vacated in like manner as any order and award made by the Commission. St. Joseph Mining Co. v. Pettitt, 90 Okla. 242, 216 Pac. 657.

It is, of course, well settled that where the Commission has previously erred in fixing the compensation through mistake, or because of fraud practiced upon it, the Commission may at any time, under section 7325, C. O. S. 1921, as amended by chapter 61, S. L. 1923, modify or change its former findings or order to effect justice. Choctaw Portland Cement Co. v. Lamb, 79 Okla. 109, 189 Pac. 750; United States F. & G. Co. v. Harrison, 125 Okla. 90, 256 Pac. 752; K. D. Oil Co. v. Ed Datel, 145 Okla. 264, 292 Pac. 564.

The stipulation and receipt herein, being equivalent to an order and award of the Commission, and the same (as heretofore stated) having been entered into under mutual mistake of fact, it therefore follows that under section 7325, C. O. S. 1921, as amended by chapter 61, S. L. 1923, and the authorities construing said section, the finding by the Commission that the stipulation and receipt was entered into under mutual mistake of fact, and that the same should therefore be set aside, as a matter of law, is correct, and the same is hereby affirmed.

### Second.

It is next contended that the Commission erred in holding claimant did not have any wage earning capacity from October 27, 1928 (the date of the accident), to July 29, 1929, by reason of said injury, and awarding claimant compensation for such period of time.

In this connection the Commission made the following finding:

"That on February 26, 1929, claimant, by reason of the continuous pain in his elbow, consulted a physician of his own choice; that said physician found upon X-ray examination claimant had a linear fracture of his left elbow, and upon physical examination that claimant was suffering from the tearing of the ligaments in said elbow; that claimant had not had any accidental (injury) subsequent to October 27, 1928, that at the time of the execution of said aforementioned stipulation and receipt, Form 7, the fact of a fracture to claimant's elbow or serious injury was not known to claimant, respondent, or its insurance carrier; that by reason of said aforementioned accidental injury claimant has been temporarily totally disabled from the performance of ordinary manual labor since the date of

said accident, to wit, October 27, 1928., That the filling station owned by claimant was operated by his family, and that claimant did not perform manual labor connected with or incident thereto, and that claimant did not have any wage earning capacity from October 27, 1928, to July 29, 1929, by reason of said injury."

While the evidence is conflicting as to the above findings made by the Commission, there is competent evidence to support the same, and this court will, therefore, not disturb the same upon appeal. Nash-Finch Co. v. Harned, 141 Okla. 187, 284 Pac. 633; Shell Pipe Line Co. v. Camper, 143 Okla. 94, 287 Pac. 1009.

The order and award by the Commission holding that claimant is entitled to compensation at the rate of $15.39 per week from October 27, 1928 (the date of the accident), to July 29, 1929, less the five-day waiting period, being 38 weeks and 3 days, amounting to $592.51, less the sum of $61.56 heretofore paid claimant by respondent and its insurance carrier, and continuing the cause for further hearing to determine the extent of disability beyond July 29, 1929, is hereby affirmed.

LESTER, C. J., CLARK, V. C. J., and RILEY, HEFNER, SWINDALL, ANDREWS, and McNEILL, JJ., concur.

LANGLEY, J., absent.

Note.—See under (3) 28 R. C. L. p. 829; R. C. L. Perm. Supp. p. 6255; R. C. L. Continuing Perm. Supp. p. 1211.