373 P.2d 1

Ruth DANSBY, Appellant,

v.

Harry Ames BUCK and Bireley's Beverages of Phoenix, Inc., an Arizona corporation, Appellees.

No. 6718.

Supreme Court of Arizona.

In Division.

July 6, 1962.

Rehearing Denied Sept. 18, 1962.

Evans, Kitchel & Jenckes, Phoenix, for appellant.

Stockton & Aldrich, Robert Ong Hing, Phoenix, for appellees.

WREN, Superior Court Judge.

This is an appeal by plaintiff, Ruth Dansby, from a judgment in favor of defendants and from an order denying plaintiff's motions to vacate said judgment and enter judgment for the plaintiff or, in the alternative, to grant a new trial.

The facts are not in dispute. Plaintiff brought suit in the Superior Court of Maricopa County to recover for personal injuries received in the collision of an automobile driven by plaintiff and owned by Sands Motor Company, and a truck owned by defendant Bireley's Beverages of Phoenix and being operated by its employee, defendant Harry Ames Buck. As part of her action, plaintiff sought to have set aside a release executed by plaintiff in favor of defendants, on the ground that such release was entered into under a mutual mistake as to the nature and extent of the injuries sustained by her in the accident. Plaintiff alleged that at the time the release was entered into all parties assumed that she had not suffered injury of any consequence; whereas, in truth and in fact, she had sustained a serious injury to her knee.

Defendants, in addition to a general denial of liability and plaintiff's injuries and damages, pleaded as an affirmative defense the release executed by plaintiff. The trial court granted defendants' motion for separate trials on the issues of (1) the validity of the release and (2) the negligence action. It is conceded by plaintiff that if the release is valid and binding, it constitutes a complete defense to the negligence action. The issue involving the release was tried to the court without a jury, and judgment sustaining the release was entered in favor of defendants. It is from the court's ruling on the release that this appeal was taken.

**4**

It was stipulated at the trial that, as to the issue involving the release, the court could assume plaintiff would be able to prove the allegations of her complaint that she had a severe fracture of the kneecap together with torn ligaments of the knee necessitating surgery, hospitalization, and medical treatment; that she suffered a permanent disability; and that all of said injuries were proximately caused by the accident.

Plaintiff had experienced a bruised knee as a known result of the accident, but had no difficulty in using it and did not believe the injury to be of any consequence. The discoloration lasted from four or five days to a week. She did not consult a doctor, and immediately returned to her employment. Approximately two weeks after the accident, she received in the mail from Sands Motor Company the release involved here, together with an accident report. This release, which purported to discharge defendants from "any and all rights of action, claims, demands and liabilities sustained, or damage suffered in mind, body or estate, which is known at this time or which may hereafter develop," was handed to Sands Motor Company by defendants' insurer. The only demand made upon defendants and their insurer had been by Sands Motors, Inc., for property damage to the automobile driven by plaintiff, which had been appraised at one hundred fifty-two and $^{17}/_{100}$ dollars ($152.-17).

Plaintiff kept the release for approximately one week; then, at the request of Mr. Sands, signed and returned it along with the accident report. Defendants' insurer subsequently issued its check in the amount of one hundred thirty-seven and $^{65}/_{100}$ dollars ($137.65), payable jointly to Sands Motors, Inc., and Ruth Dansby. The draft was endorsed by plaintiff and turned over to the Motor Company.

Plaintiff had made no claim of any kind and did not receive any money. There had been no negotiations as to any personal injury. She testified she would not have executed the release had she known, at the time, of the serious injury received by her as a result of the accident. Evidence adduced at the trial established that at the time plaintiff executed the release, and at the time defendants' insurer issued its check for one hundred thirty-seven and $^{65}/_{100}$ dollars ($137.65), neither she nor the said insurer knew or had reason to believe that plaintiff had actually sustained severe injuries. To the contrary, testimony required the assumption she had sustained only a bruised knee.

Plaintiff brings this appeal on two assignments of error:

1. The trial court erred in entering judgment in favor of defendants, for the reasons and upon the grounds that (1) the

evidence clearly established that the release was entered into under a mutual mistake as to an unknown injury caused by the accident and existing at the time of the release and purported settlement, and not taken into consideration therein; and (2) it being so established, plaintiff was entitled to a judgment and decree setting the release aside.

2. The trial court erred in denying plaintiff's motions to vacate the judgment in favor of defendants and enter judgment in favor of plaintiff or, in the alternative, to grant a new trial, for the reasons and upon the grounds set forth in Assignment of Error No. 1.

There seems to be great confusion in the opinions of the various courts as to what is required to void a general release for personal injuries on the grounds of mutual mistake, where one who has sustained personal injuries, with his attention directed to the known injuries which are trivial in their nature, executes such release in ignorance of other and more serious injuries, both parties believing at the time that the known injuries are the only ones sustained. However, many of the cases which do not appear in harmony can be reconciled when the particular facts to which the statements of the court applied are taken into consideration.

The plaintiff asserts to this court that even though the release signed by plaintiff expressly covers unknown injuries which might thereafter develop, it is not a bar to an action for such unknown injuries if it can be shown that such injuries were not within the contemplation of the parties when the settlement was agreed upon. Plaintiff argues that where the parties, with their attention directed to known injuries, contract for a settlement with reference thereto in ignorance of other and more serious injuries, believing the known injuries are the only ones sustained, there is "mutual mistake;" that a release executed under such mistake is no bar to an action for the unknown injuries; and that even an expression in the release that it includes unknown injuries is not conclusive, and mutual mistake may be shown for the purpose of vitiating the agreement. Aronovitch v. Levy, 238 Minn. 237, 56 N.W.2d 570, 34 A.L.R.2d 1306 (1953); Nygard v. Minneapolis Street Ry. Co., 147 Minn. 109, 179 N.W. 642 (1920); Denton v. Utley, 350 Mich. 332, 86 N.W.2d 537 (1957).

It is uniformly held that a general release of a claim for personal injuries may, under proper circumstances, be avoided on the ground of mutual mistake as to the nature or seriousness of the injury. Robert Hind, Ltd., v. Silva, 75 F.2d 74 (9th Cir.1935); annot. 48 A.L.R. 1462, and authorities cited thereunder. See, in particular, pp. 1467–1471. We believe sound logic, as well as the greater weight

**6**

of authority, supports the rule laid down by those authorities. Arizona cases on this point involve factual situations in which there was either actual or constructive fraud. See Atchison T. & S. F. Ry. Co. v. Peterson, 34 Ariz. 292, 271 P. 406 (1928); Pacific Gas & Electric Co. v. Almanzo, 22 Ariz. 431, 198 P. 457 (1921); Southern Pacific Co. v. Gastelum, 36 Ariz. 106, 283 P. 719 (1929).

■ It is well recognized that a release will be set aside, notwithstanding its broad and general terms, if it is clearly established that the release was entered into under a mutual mistake as to a substantial injury, existing but unknown at the time and not taken into consideration. It matters not that the releasor read and understood the release. Southwest Pump & Machinery Co. et al., v. Jones, 87 F.2d 879 (8th Cir.1937); Atchison T. & S. F. Ry. Co. v. Peterson (supra).

Defendants argue that this rule is not applicable to the consequences or future development of a known injury and that under the facts of the case at bar plaintiff had an actual, known knee injury at the time she gave the release; that any mistake was merely as to the future development of a known injury. Defendants point out the trial court could reasonably have so found.

Both parties agree on the law applicable to this contention but not its factual application here. The arguments are summarized in 48 A.L.R., pp. 1473–1475:

"The distinction between cases where the release is executed under mistake as to the future development of a known injury, in which event there is no ground for avoidance, and cases where unknown injuries exist which were not taken into contemplation and for which no consideration was paid when the release was executed, under which circumstances it may be avoided, is pointed out in a Nebraska case [Simpson v. Omaha and C. B. Street Ry. Co., 107 Neb. 779, 186 N.W. 1001 (1922)], in which the court said: ' * * * What we believe to be the true rule is that the mistake must relate to either a present or past fact or facts that are material to the contract of settlement, and not to an opinion as to future conditions as the result of present known facts. A mistake as to the future development of a known injury is a matter of opinion, and is not one of fact, and is not such a mistake as will avoid a release; but, where the mistake is as to the extent of the injury, due to unknown conditions, or relates to injuries that were wholly unknown, then the release may be avoided, * * ' "

(Also see Richardson v. Chicago, M. & St. P. Ry. Co., 157 Minn. 474, 196 N.W. 643 (1924)). There is no factual basis

here for invoking the rule advanced by defendants. It is patent that we are dealing with an unknown fracture, not the unknown consequence of a bruised knee. Fractures do not develop from superficial injuries.

■ Defendants also seek to avoid application of the general rule stated above by arguing that they, in addition to compensation for damages, were forestalling all possible future claims of the plaintiff, by buying a potential lawsuit, and were buying peace, since plaintiff had never filed a formal claim. The insurance company agent testified the amount ($137.65) was paid to "settle all claims resulting from this accident." Therefore, defendants argue, the mistake, if any, was unilateral, and the release cannot be set aside. They cite as authority Automobile Underwriters v. `Smith, 126 Ind.App. 332, 133 N.E.2d 72 (1956), and assert there can be no rescission on the ground of mutual mistake if the actual intention of the parties was to settle for all possible injuries, both known and unknown, which might result from the accident. Aronovitch v. Levy, 238 Minn. 237, 56 N.W.2d 570, 34 A.L.R.2d 1306 (1953); Cogswell v. Boston & Main Railroad, 78 N.H. 379, 101 A. 145 (1917); Thomas v. Hollowell, 20 Ill.App.2d 288, 155 N.E.2d 827 (1959); 45 Am.Jur., Release, § 19.

Again we agree with defendants' statement of the law but not its application here. We would not be understood as holding that a person cannot intentionally assume the risk of serious unknown injuries in a valid release.

"Parties may preclude recovery for all injuries, whether known or unknown, if it is their intention at the time to do so." 45 Am.Jur., Release, § 19.

In the case of Aronovitch v. Levy (supra), cited by both parties in their briefs, the court quoted from a previous decision by it in Nygard v. Minneapolis Street Ry. Co., 147 Minn. 109, 112; 179 N.W. 642, 644 (1920), as follows:

"Of course, when parties intentionally settle for unknown injuries received in an accident, the release obtained is incontestable. But the cases where they deliberately undertake so to do must be rare."

■■ Such an intention will often be found where the releasee is buying his peace, and where not so much the extent of the supposed injuries as the question of liability is the subject matter of the settlement. If a person releases his claim for damages for injuries, ignorant of the facts which may affect such injuries, and meaning to waive all inquiry thereinto and investigation thereof, any mistake with reference thereto is not a mistake in a legal sense. If such has, in truth, been the

intention and the agreement, we will not disturb the parties. As Williston puts it:

" * * * where a release is given by one injured in an accident and more serious injuries develop than were supposed to exist at the time of the settlement, it is a question of fact whether the parties assumed as a basis of the release the known injuries, or whether the intent was to make a compromise for whatever injuries from the accident might exist whether known or not." Williston, Contracts, Revised Ed. § 1551 (1937).

The intent is, of course, a question of fact, and we must look to all the circumstances surrounding the release: factors such as nature and extent of the injuries, negotiations, consideration paid for the release, haste or lack thereof with which a release was obtained, and the conduct and intelligence of both the releasor and the releasee.

■ Looking now to the case before us, the evidence is uncontroverted that neither plaintiff nor defendants had knowledge of the fractured kneecap or torn ligaments at the time the release was signed. The only known injury resulting from the accident was a bruise which, together with all soreness, had completely disappeared. Plaintiff testified she would not have signed the release had she known the true condition of her knee. It seems clear that defendants' insurer was likewise mistaken. It is a significant fact that there were no discussions or negotiations at all between plaintiff and defendants or their insurer with respect to any claim she might have. There was no bargaining. The reasons were clear. On the date of the release she knew of no injury and had had no financial loss. It is true that plaintiff signed the release with full knowledge of its legal implications; but this does not operate, as defendants urge, to defeat her claim, if it was entered into under a mutual mistake as to an unknown injury not taken into consideration therein. Atchison, T. & S. F. Ry. Co. v. Peterson, 34 Ariz. 292, 271 P. 406 (1928). In the body of the release in the Peterson case, the following words appear in the releasor's handwriting:

"I have read the above voucher, receipt and release and fully understand the same." 34 Ariz. at 297, 271 P. at 407.

The releasor did not contend otherwise.

■ That all parties hereto were mistaken as to the extent and character of plaintiff's injuries is further indicated by the amount of the consideration given in settlement. See Denton v. Utley, 350 Mich. 332, 86 N.W.2d 537 (1957); Southwest Pump and Machinery Company et al. v. Jones, 87 F.2d 879, 881 (8th Cir. 1937). Inadequacy of consideration is not

ordinarily, of itself, a basis for the cancellation of an executed contract. Yet, along with other circumstances, it is a proper element for consideration. If plaintiff's injuries are of the character pleaded and stipulated to for the purpose of this suit, then the sum paid here, even if shared by her, would be very inadequate.

The facts of the instant case clearly indicate that the insurer was bargaining only the question of compensation for the Sands vehicle and not the absolution of liability for any and all unknown personal injuries, however serious that plaintiff might have sustained. Nor can it be seriously argued that plaintiff, under these circumstances, understood she was giving away, or trading for a trifling sum, a claim for severe injuries then unknown.

The transcript reflects that the entire settlement was negotiated on the basis of property damage to Mr. Sands' automobile. Mr. Cooper, the claims manager for defendants' insurer, testified at one point:

"As I recall, we issued a draft based on a compromise settlement of his (Mr. Sands') claim."

Plaintiff Ruth Dansby claimed nothing and received nothing as a result of the accident. Damage to the vehicle in which she was riding was appraised at one hundred fifty-two and $\frac{17}{100}$ dollars ($152.17). The final settlement, payable jointly to her and the owner of the vehicle, was one hundred thirty-seven and $\frac{65}{100}$ dollars ($137.65).

The evidence is clear and indisputable that the parties intended to pay and receive, respectively compensation on the basis of damages then known by the parties to exist. Defendants and their insurer knew that Mrs. Dansby had sustained a bruised knee but made no effort to contact her, nor did she make any effort to contact them. They did, however, require her endorsement on the draft and her signature on the release.

Plaintiff relies heavily upon Denton v. Utley (supra), which case is remarkably similar to the one at bar. There plaintiff executed a release in order to obtain fifty dollars ($50.00) from defendants' insurer for property damage to his car. In good faith, he disclaimed any injury. The release, like the one here before the court, was all-inclusive:

"* * * and all claims, demands, causes of action of every nature which he/they now have or hereafter may have against any person * * * and forever discharge all persons from any further claim or payment because of said accident and damage done herein." 350 Mich. at 334, 86 N.W.2d at 538.

There was no evidence of fraud. Denton did not deny reading the release or under-

standing it. The sole issue before the court was the validity of the release. Injury was conceded for the purpose of tendering the issue. Defendants had answered, in part, that plaintiff was aware of a limited amount of injury before the release was executed, and had argued that plaintiff had read and fully understood the release; that there was no fraud and no duress; that if there was a mistake, it was not mutual; and that society demanded such a release be upheld. In affirming the lower court's order setting aside the release, the court stated:

"In the particular case before us, involving a release, we confront merely a specialized application of the overriding principle that in its accomplishment of its mission, equity will strike down without hesitation any agreement resulting from oppression, fraud, mutual mistake of the contracting parties, or other evil. The cases rest upon this great principle, not upon the minutiae urged. It matters not how sweeping are the words involved. When their content cloaks iniquity they shall be vacated and held for naught. To put it affirmatively, any release, to be sustained, must be 'fairly and knowingly' made. * * *"

And, in another paragraph:

"For, despite the recital (and payment) of consideration, despite the employment of affirmations of full and complete understanding ('I have read the above and fully understand its meaning'), despite the doctrine of the sanctity of the written instrument, despite, in fact, the predictions of business and frustration and collapse, the courts continue, in case after case, to set aside the most solemnly cast· releases. As Wigmore, in his Treatise on the Anglo-American System of Evidence, 3rd Ed., § 2416, put it, such is the modern trend, 'liberally relieving the party who has signed the release.'" 350 Mich. at 342, 340, 86 N.W.2d at 541.

These competing considerations give us difficulty with the case at bar. Several jurisdictions adhere to the legal concept and reasoning stated in Reinhardt v. Wilbur, 30 N.J.Super. 502, 105 A.2d 415 (1954):

"The very suggestion of invalidation for such cause [injuries of which the releasor was not aware at the time of execution of the release] is contrary to firmly embedded principles of law. We cannot shut our eyes to the realities of everyday practice. Persons involved in accidents or their representatives carry on and conclude negoitations precisely because there is uncertainty as to the extent of injuries or liability or both, and because of the uncertainty as to the outcome of any ensuing litigation. A general

release duly executed and fairly obtained is a complete bar to further recovery for injuries sustained. Otherwise, the floodgates would open and not only persons like the plaintiff would seek avoidance, but also those who had paid substantial sums if supposedly serious injuries later proved to be minor." 30 N.J.Sup. at 505, 105 A.2d at 416–417.

■ As a court, we want to insure stability of the business world. We do not want to open the door to wholesale repudiation of releases. If we were to discourage settlements, we would increase litigation. It has always been the policy of the law to favor compromise and settlement; and it is especially important to sustain that principle in this age of voluminous litigation, particularly in the field of the automobile accident case. It must be remembered that the question of liability, as well as the extent of injury, may well be in the minds of the parties. But, as was soliloquized in Denton v. Utley:

"We have not yet reached the 'Lawyer's Paradise where all words have a fixed precisely ascertained meaning; where men may express their purposes, not only with accuracy, but with fulness; and where, if the writer has been careful, a lawyer, having a document referred to him, may sit in his chair, inspect the text, and answer all questions without raising his eyes.' Thayer, A Preliminary Treatise on Evidence, (1898), [pages] 428, 429 * * *.

"The argument *in terrorem* fails here, as it has always failed, and for precisely the same reason: We exist solely to do justice and it shall be done." 350 Mich. at 338, 342, 86 N. W.2d at 539–540, 541.

■ We therefore subscribe to the rule of those cases which do not depend or rely upon the language employed in the release or the form thereof, which states, simply: The releasor who believes he is without personal injuries or that he has certain minor injuries only, and who, secure in his belief, executes a general release, will not be bound by it if other and more definite serious injuries are discovered later. Great Northern Ry. Co. v. Reid, 9 Cir., 245 F. 86 (1917); Pickering Lumber Co. v. Campbell, 147 Okl. 158, 295 P. 596 (1931); O'Meara v. Haiden, 204 Cal. 354, 268 P. 334 (1928), 60 A.L.R. 1381; Nygard v. Minneapolis Street Ry. Co., 147 Minn. 109, 179 N.W. 642 (1920); Richardson v. Chicago, M. & St. P. Ry. Co., 157 Minn. 474, 196 N.W. 643 (1924); Simpson v. Omaha & C. B. Street Ry. Co., 107 Neb. 779, 186 N.W. 1001 (1922); Landau v. Hertz Drivurself Stations, Inc., 237 App.Div. 141, 260 N.Y.S. 561 (1932); McIsaac v. McMurrary, 77 N.H. 466, 93

A. 115, L.R.A.1916B 769 (1915); Ostegaard v. Adams & Kelly Co., 113 Neb. 393, 203 N.W. 564 (1925); Gold Hunter Mining & Smelting Co. v. Bowden, 252 F. 388 (9th Cir.1918); Granger v. Chicago, M. & St. P. Ry. Co., 194 Wis. 51, 215 N.W. 576 (1927); Southwest Pump & Machinery Co. v. Jones, 8 Cir., 87 F.2d 879 (1937); Denton v. Utley, 350 Mich. 332, 86 N.W.2d 537 (1957).

We believe the better rule to be that where the parties contract for a release of all claims for known injuries, the release is a bar to recovery for unknown consequences of known injuries, but is not a bar to recovery for unknown injuries not within the contemplation of the parties at the time of contracting for such release; further, that even though a release expressly covers unknown injuries, it is not a bar to an action if it can be shown that such unknown injuries were in existence and were not within the contemplation of the parties when the settlement was agreed upon, but that, if the parties did in fact intentionally agree upon a settlement for unknown injuries, such release will be binding. Whether the parties intended the release to cover unknown injuries is usually a question of fact.

For the foregoing reasons, we conclude that the record clearly established that the release was induced by mutual mistake as to an unknown injury and should have been set aside. Such a release cannot relegate plaintiff to the position of *damnum absque injuria*. Accordingly, the judgment of the lower court is reversed, with directions from this court to enter judgment for plaintiff, decreeing therein that the release be set aside.

Judgment reversed.

BERNSTEIN, C. J., and STRUCKMEYER, J., concur.