458 P.2d 977

**Gerald C. MELVIN, Appellant,**

v.

**James W. STEVENS, Appellee.**

**No. 1 CA–CIV 641.**

Court of Appeals of Arizona,
Division 1.
Department A.
Sept. 16, 1969.

Charles Christakis, Phoenix, for appellant.

Kenneth S. Scoville and LeRoy Hofmann, Phoenix, for appellee.

DONOFRIO, Presiding Judge.

This is an appeal by the plaintiff in a personal injury action which resulted in the entry of a judgment in favor of defendant because of a general release executed by plaintiff. The question to be determined is the validity and effect of the release in the face of allegations of fraud and mutual mistake.

On April 30, 1961, the plaintiff-appellant, Gerald Melvin, was injured in an automobile accident near Salome, Arizona, when his 1956 Ford in which he was a passenger collided nearly head-on with a car being driven by the defendant-appellee, James Stevens. Melvin was taken to Wickenburg Community Hospital where his right arm was X-rayed. The medical report by Dr. Paul W. Kliewer showed there was no fracture or significant abnormality and it was ordered that ice packs be applied to the arm of the patient. The following morning, May 1, plaintiff went to his insurance agent's office where he was referred to Mr. James Reece, the insurance company's field claim representative. Both plaintiff and defendant were insured by State Farm Mutual Insurance Company and plaintiff was advised of this at a meeting with Mr. Reece on May 2 when the initial claim report was filled out. That same day plaintiff went to his family physician, Dr. Terry Moats, complaining of pain in the upper right arm. Dr. Moats examined him, took X rays and found there were contusions but no fractures. He did not believe that the injuries were serious and he reported that to the plaintiff, advising him that he need not return,

but to apply heat to the arm. On May 10 plaintiff tried to see Dr. Moats about returning to work, but was referred to Dr. Louis Bos because Dr. Moats was ill at the time. Dr. Bos testified that on May 10 his findings were that there was "an irritation or inflamation of the muscles characterized by swelling, tenderness and pain in that area." He diagnosed it as a tear of the flexor muscles and advised plaintiff to apply hot packs for one hour three times daily and that possibly he could return to work on the 15th of May. Plaintiff testified that it was his understanding from the advice of all the doctors that he had suffered only a bruise to the arm and that it would soon heal without any problems.

On May 11, 1961, the day after seeing Dr. Bos, the plaintiff accompanied by his adult son went to Mr. Reece's office where he read and signed the following release:

"For the sole consideration of One thousand and 0⁰⁄₁₀₀ (sic) Dollars, the receipt and sufficiency whereof is hereby acknowledged the undersigned hereby releases and forever discharges James W. Stevens his heirs, executors, administrators, agents and assigns, and all other persons, firms or corporations liable or who might be claimed to be liable, none of whom admit any liability to the undersigned but all expressly deny any liability, from any and all claims, demands, damages, actions, causes of action or suits of any kind or nature whatsoever, and particularly on account of all injuries, known and unknown, both to person and property, which have resulted or may in the future develop from an accident which occurred on or about the 30th day of April, 1961 at or near Salome, Arizona.

"Undersigned hereby declares that the terms of this settlement have been completely read and are fully understood and voluntarily accepted for the purpose of making a full and final compromise adjustment and settlement of any and all claims, disputed or otherwise, on account of the injuries and damages above mentioned, and for the express purpose of precluding forever any further or additional claims arising out of the aforesaid accident.

"Undersigned hereby accepts draft or drafts as final payment of the consideration set forth above."

It is the conversation and circumstances of the meeting with Mr. Reece that give rise to the plaintiff's contentions of fraud and mutual mistake and they will be discussed in detail with those issues. For now, the chronology of events can be completed by adding that on May 18 plaintiff returned to Dr. Bos complaining that he was still unable to straighten his arm and that there was numbness of the thumb and index fingers of the right hand. Dr. Bos sent him back to Dr. Moats who referred him to Dr. John A. Eisenbeiss, a neurosurgeon, who found that there was an organized hematoma (blood clot) causing pressure on the radial nerve of the arm which in turn was causing wrist drop and numbness. Surgery was subsequently performed, with the clot being removed, and normal functioning returned to the arm. During surgery it was found that the bruise extended all the way to the periosteum (covering of the bone) and in the opinion of Dr. Eisenbeiss might have been formed in the muscle, although it was probably formed in the periosteum.

In December 1961 the plaintiff filed a complaint against the defendant, seeking compensatory and punitive damages for alleged negligence and gross negligence. Under 16 A.R.S. Rules of Civil Procedure, Rule 42(b), a separate trial was held on the validity of the release. The release was found to be binding and judgment was entered against the plaintiff. From the judgment and denial of a new trial plaintiff brings this appeal.

■ In passing upon the issues which we believe are of merit in deciding the appeal before us, we first consider plaintiff's argument that the trial court erred in refusing to permit him to examine the

defendant on the issue of gross negligence. In sustaining defendant's objection to the introduction of the evidence, the trial judge stated:

"At this time the court will sustain the objection. I will advise counsel, however, that the court may change its ruling. Counsel may renew his request to examine Mr. Stevens later. Now, after the court has heard the other evidence in the case the court may decide it is material, but at this time the court will not permit it."

It is well recognized in Arizona that the order of proof is a matter entirely within the discretion of the trial judge. Udall, Arizona Law of Evidence, § 4, p. 12 (1960). Thus, we can find no error in the provisional exclusion when the record discloses that nowhere did the plaintiff again urge the admission of the evidence.

■ We next consider the argument advanced by plaintiff that the evidence clearly showed actual or constructive fraud, or mutual mistake, and that the court erred in not setting aside the release on those grounds. It is true that a release, or other contract, may be rescinded where it was entered into under conditions of fraud or mutual mistake. Atchison Etc. Ry. Co. v. Peterson, 34 Ariz. 292, 271 P. 406 (1928); Dansby v. Buck, 92 Ariz. 1, 373 P.2d 1 (1962). However, the party attacking the contract has the burden of establishing the vice which he alleges induced it, and a mere preponderance of the evidence is inadequate. The evidence of fraud or mistake must be clear and convincing. Where fraud is alleged, there must be a misrepresentation of a material fact by the defendant or his agent, which was relied upon by the plaintiff in signing the release. If the misrepresentation is intentional, actual fraud is involved; if unintentional, constructive fraud is involved. Atchison Etc. Ry. Co. v. Peterson, supra. In addition, as an appellate court we must view the evidence in the light most favorable to

affirming the trial court's decision, Chadwick v. Winn, 101 Ariz. 533, 421 P.2d 890 (1966), and we must sustain the action if the record shows that as to any of the essential elements the trier of fact was reasonably justified in finding that the party alleging fraud failed to meet the required standard of proof. Lock v. Lock, 8 Ariz.App. 138, 444 P.2d 163 (1968).

■ Plaintiff contends that at the May 11 meeting when the release was signed the claims representative, Mr. Reece, misrepresented to the plaintiff, (1) that the release was for the damages to the car alone, and (2) that the plaintiff was only entitled to what it would cost to repair the car, whereas under the law plaintiff was entitled to the difference in value immediately before and after the accident.

As to the first alleged misrepresentation, plaintiff testified that Mr. Reece at all times led him to believe the release was only for the car. However, Mr. Reece testified that of the $1,092.00 paid for the release, it was explained to plaintiff that only about $480.00 was for the car, while the remainder was for medical expenses, lost wages, mental anguish and inconvenience. Both plaintiff and Reece testified they discussed the arm injury and that Reece advised plaintiff that should any additional problems develop they would be covered up to the policy limits under the plaintiff's medical coverage. Also, Reece testified he advised plaintiff to wait a while and see what developed with the injury, but that plaintiff chose to go ahead and sign the release to get the money for a new car. It is not within our province to determine whether the conversation as described by Reece took place; that was purely a question of fact to be determined by the trial judge and he evidently found it to be true. We cannot reverse his decision under these facts.

■ In support of the second alleged misrepresentation as to the measure of damages for the automobile, plaintiff has cited Valley Transp. System v. Reinartz, 67 Ariz. 380, 197 P.2d 269 (1948). There

it was held that the decrease in market value would be the proper measure of damages where the automobile for all practical purposes is destroyed and not susceptible of repair. In the instant case plaintiff testified he would not accept the car with the proposed repairs. There was no evidence, however, that the car was beyond reasonable repair. To the contrary, there was a repair estimate of about $480.-00 by Read Mullan Motor Co. Again, there was evidence to uphold the trial court's decision.

Plaintiff's argument for mutual mistake is that both he and the defendant's agent Reece were under the impression at the time of signing the release that the injury was not a serious bruise, when in fact it was a severe bruise to not only the soft tissue of the arm, but also to the periosteum with an organized hematoma and therefore is within the rule of Dansby v. Buck, supra. In Dansby it was stated that a release may be rescinded if at the time of contracting the parties did not contemplate coverage of injuries which were unknown as to either nature or extent, but that it would be a complete bar to an action by the releasor to recover merely for the consequences of a known injury. The court then went on to hold that in that case where the parties believed the injury to be only a bruise to the knee when in fact it was a fracture, there was an unknown injury and set aside the release.

Defendant argues that the instant case is squarely within the principle of Hoopes v. Lamb, 102 Ariz. 335, 429 P.2d 447 (1967), where at the time of signing the release the plaintiff had knowingly suffered fractures of several bones which later failed to mend properly due to a condition known as pseudarthrosis and it was held that the facts showed an unknown consequence of a known injury, and this supported summary judgment denying rescission.

The line between injuries which are unknown in nature or extent and injuries which are known but develop unknown consequences can in some circumstances be a narrow one, and is primarily an issue of fact. 71 A.L.R.2d 105. The language most commonly used to describe the difference is that in order to be grounds for invalidating a release the mistake must relate to a past or present fact material to the contract and not to an opinion concerning future conditions as a result of present facts. Thus, the prognosis or probable path of recovery or complication is a matter of opinion respecting future events and, if mistaken, will not be grounds for rescission. Diagnosis, or analysis of injury in terms of nature and extent, on the other hand, is a question of present fact and, if mistaken, will be grounds for rescission.

In the instant case plaintiff contends that the facts are within the principle of the Dansby case by arguing that the injury was thought to be only a minor, superficial bruise, when in fact it was a deep-seated bruise to the periosteum with an organized hematoma. The facts clearly reveal, however, that the bruise was so severe that plaintiff's arm was still swollen and painful the day before signing the release when he went to Dr. Bos, which was about ten days after the accident, and that he was still unable to fully straighten his arm. They also show that on the day he signed the release plaintiff and Mr. Reece looked at the arm and were aware of the fact that there was a hard core or knot in the bruise. Dr. Bos diagnosed the injury as a tear of the flexor muscles, and Dr. Moats testified that the subsequent nerve impairment was a complication of the original injury and consistent with his diagnosis.

Finally, in describing the origin of the organized hematoma, Dr. Eisenbeiss explained that here, as in all bruises, some blood vessels were ruptured with a slow leakage of blood taking place, but instead of it being absorbed as usually happens, it organized and caused pressure on the radial nerve. Therefore we hold that under these facts the trier of fact could properly find that the subsequent problems

were unknown consequences of known injuries. It was not a case where the parties believed it was a minor bruise when in fact it was a severe bruise with the muscles torn from the bone (as in Poti v. New England Road Machinery Co., 83 N.H. 232, 140 A. 587 (1928)), but is a case where they were substantially correct as to the nature and extent of the bruise and incorrect only in its prognostic recovery as in Spangler v. Kartzmark, 121 N.J.Eq. 64, 187 A. 770 (1936). Here, as in Spangler, the fact that there was a mistake as to the exact depth of the bruise does not amount to a mistake of nature or extent.

Affirmed.

STEVENS and CAMERON, JJ., concur.