Rockingham, }
June 1, 1937. }

MARGARET F. AHEARN, *Adm'x*

*v.*

ELDREDGE BREWING COMPANY, INC.

*Hughes & Burns (Mr. Burns* orally), for the plaintiff.

*Arthur E. Sewall* and *Thomas L. Cleaton* (*Mr. Sewall* orally), for the defendant.

PAGE, J.   This is the same case reported 88 N. H. 287.

The death of the plaintiff's intestate occurred in the defendant's No. 8 tun, into which Ahearn had gone with the intention of removing a plug in order to permit the sediment to drain off.   The beer had already been drawn out.   Nobody witnessed the death of the intestate, but the plaintiff proceeded upon the theory that it was caused by carbon dioxide gas generated during fermentation and sinking to the bottom of the tun after the beer was drawn.

It might be found that prior to bringing any proceeding for the recovery of damages, plaintiff's counsel called upon William J. Wilson, the defendant's brew-master in complete control of the brewery, and asked for information concerning Ahearn's death.   Wilson said that in his opinion Ahearn had been overcome because he had failed, before entering the tun, to wash down the sides as he was supposed to do.   Consequently, Wilson thought more gas than usual remained in the tun when Ahearn descended into it.   Plaintiff's counsel asked Wilson point-blank whether there was any reason for the presence on the morning of Ahearn's death of a greater density of gas than was usual.   Wilson replied that the only reason was Ahearn's failure to wash down the sides of the tun before entering.

After the former opinion in this case was rendered on December 1, 1936, the plaintiff filed a petition for a new hearing for the purpose of introducing further evidence that death had been due to asphyxiation, a theory that the Presiding Justice in substance had rejected in his findings made after the trial of the facts upon the petition for compensation.   On December 18 the Presiding Justice requested counsel to furnish affidavits as to the additional evidence which the plaintiff desired to offer.

Three days later plaintiff's counsel again interviewed Wilson, whom he told that he wished to show that the gas was unusually dense when Ahearn died.   Wilson replied that he had given counsel all the information in his possession.   Counsel then raised the question whether there was any evidence that Ahearn had actually reached the bottom of the tun in the usual way and had attempted to remove the plug before he was overcome.   Wilson did not know, but referred counsel to one Hartnett, a workman in the tun-room.   Hartnett also did not know, but told counsel that Carroll, chief engineer for the defendant at the time of the death, had removed the plug after

Ahearn's decease, using a long pipe because of the density of the gas.

Counsel then went to Carroll, no longer employed by the defendant, and learned for the first time that on the afternoon preceding the morning of Ahearn's death in tun No. 8, that tun and tun No. 7 had been connected in such manner that the overflow from No. 7, then actively fermenting, would greatly increase the density of gas in No. 8. The plaintiff thereupon collected certain affidavits, took Wilson's deposition, and filed the petition to rescind the election. By agreement of the parties the deposition and affidavits were considered by the Presiding Justice in passing upon the petition.

Although the evidence was conflicting, it might be found that gates to prevent the passage of gas had not, prior to Ahearn's death, been placed in the connection between No. 7 and No. 8, also that this connection was the first of the sort made in the tun-room. The plaintiff claims that Ahearn was not warned by the defendant that the change had been made and that there was increased danger of the accumulation of gas in No. 8.

The court found that counsel for the plaintiff was given full opportunity at any time to examine the defendant's plant and to interview witnesses relative to the circumstances surrounding Ahearn's death, but that he did not follow the matter up because of the statement by Wilson that there was no reason for the presence of an unusual quantity of gas at the time of Ahearn's death except his own negligence in failing to wash down the sides of the tun.

It is conceded that neither the defendant nor Wilson was under any duty to disclose the information asked for by the plaintiff. The plaintiff contends, however, that her election to proceed under the compensation statute was motivated by the false statement made by Wilson. Consequently she says that she is entitled to relief from an election made in reliance upon an untrue statement which misled her. The overruling of the motion to dismiss and the granting of the plaintiff's petition to rescind the election involve a finding (nothing to the contrary appearing) of all the facts necessary to enable the court to grant relief. *Eleftherion* v. *Company*, 84 N. H. 32, 35. It may be taken, therefore, for present purposes that Wilson made the statement, that it was untrue, that he knew about the increased danger caused by the changes, and that the plaintiff made her election in ignorance of the true facts and in reliance upon the truth of Wilson's statement that Ahearn's contributory negligence was the only explanation of the presence of gas in unusual volume or density.

The plaintiff's counsel, in advising the election, does not appear as in *Churchill* v. *Company*, 86 N. H. 415, to have had knowledge of the incompleteness of his information; on the contrary it would appear that he acted upon the belief that he had full information. In view of the assurance given him by the person who was in effect superintendent of the whole brewery and in a position to know the truth, that there was no fact other than the fault of the deceased to account for the unusual accumulation of gas, plaintiff's counsel is not conclusively charged with negligence or want of judgment. If Wilson had refused to give the information sought, an election made without further investigation might have left this case upon all fours with the *Churchill* case, for then it might not have been said that an unintended result ensued from the election. As the case stands, it is clear that counsel was disappointed in his intention because of misinformation given him regarding a fact material to the election. This is not a case where the defendant was itself ignorant of important facts (*Cogswell* v. *Railroad*, 78 N. H. 379) and could not be found to have misled the plaintiff.

The defendant's contention that Wilson could not be found to have understood that counsel was inquiring about Ahearn's death with a view to making an election has no merit. Wilson, according to the evidence, was frankly told by counsel that he "represented the estate of Michael Ahearn, and was interested to know the cause of his death and the circumstances under which he died." The court could well have found that Wilson gave information with full knowledge that the plaintiff's course might be determined by such information as he imparted.

While the defendant owed no duty to inform and instruct the plaintiff, it cannot complain that the plaintiff acted upon information given by its brew-master. Even if the brew-master was not the agent of the defendant for that purpose, the plaintiff was misled. The defendant, on the contrary, was not misled. The law will not permit the defendant to take advantage of the plaintiff's election under such circumstances of mistake. The plaintiff must have relief from what she did contrary to her purpose. *Eleftherion* v. *Company*, 84 N. H. 32. The argument that Wilson was not the agent of the defendant to instruct the plaintiff is immaterial; whether or not he acted within the scope of his authority, the plaintiff's action was the result of mistake without fault upon her part.

*Exceptions overruled.*

All concurred.