879 P.2d 2

Don Charles DIETZ, Plaintiff–Appellant, Cross Appellee,

v.

Alex LOPEZ and Jane Doe Lopez, husband and wife, Defendants–Appellees, Cross Appellants.

No. 1 CA–CV 92–0312.

Court of Appeals of Arizona, Division 1, Department C.

Aug. 9, 1994.

Ethan Steele, Tucson, for appellant, cross appellee.

Robert F. Clarke, Treon, Strick, Lucia & Aguirre, P.A. by Sharon G. Slifko, Jennings, Strouss & Salmon by Douglas L. Christian, and Solomon, Relihan & Blake, P.C. by Kevin J. McAlonan, Phoenix, for appellees, cross appellants.

OPINION

REBECCA A. ALBRECHT, Judge.*

The plaintiff argues that the summary judgment entered in the defendants' favor should be set aside because their settlement agreement was based on a mutual mistake of fact as to the nature and extent of the plaintiff's injuries. Because the only reasonable inference from the facts is that the plaintiff settled in contemplation of the possibility of more serious injuries, we hold that summary

* NOTE: The Honorable REBECCA A. ALBRECHT, Judge of the Superior Court of Maricopa County, was authorized by the Chief Justice to participate in this appeal pursuant to Section 3 of Article VI of the Arizona Constitution.

judgment was appropriate. Because of the court's resolution of the appeal in this matter, the court does not reach the issues raised in the cross-appeal.

■ The burden of establishing the mistake of fact, by clear and convincing evidence lies with the party asserting the mistake. *Melvin v. Stevens,* 10 Ariz.App. 357, 360, 458 P.2d 977, 980 (1969). A motion for summary judgment must be granted if the party with the burden of proof, in this case Dietz, presents no admissible evidence which creates a material issue of fact. *Orme School v. Reeves,* 166 Ariz. 301, 802 P.2d 1000 (1990). Judgment must be affirmed if there is no such disputed fact and the moving party is entitled to judgment as a matter of law. *Id.* The facts are viewed in the light most favorable to Dietz, the party against whom summary judgment was granted. *See Ness v. Western Sec. Life Ins. Co.,* 174 Ariz. 497, 500, 851 P.2d 122, 125 (App.1992).

A car driven by Alex Lopez collided with one driven by Don Dietz. At the time of the accident, Lopez had automobile liability coverage with Allstate Insurance Company. Thereafter, Dietz wrote a letter to the Allstate adjuster outlining his then-current expenses incurred as a result of the accident. In a phone conversation on March 1, 1989, the adjuster explained that Allstate would not pay on Dietz's liability claim until his treatment was complete and he was in a position to settle the entire claim. Dietz continued to contact Allstate's adjusters about his claims. They explained that Allstate would not pay anything until Dietz was in a position to settle the entire claim.

On July 15, 1989, Dietz wrote a letter to Allstate:

The wrist is still very sore and shows no sign of healing. Therefore I would think we have at least as much expense left to get this healed[.] Also I moved to Arizona to enjoy golf which I have not been able to enjoy since the accident.

I would prefer to reach an agreement with you now rather than just let things run their course and have determined that I would settle for a cash payment of $25,000 now.

Allstate's adjuster wrote back to Dietz offering $7,000 over Dietz's itemized expenses to date, for a total offer of $10,685.61.

On August 21, 1989, Dietz wrote Allstate:

I'm sorry to advise but the injury to the right wrist is more serious than the tendonitus [sic] you think. As you know I have had extensive therapy on the wrist and as of now no satisfaction of healing. No one seems to know the solution so at present the possibility of permanent disability is certainly a possibility. I have another appointment this Friday with Dr. Houle and hope to get an answer. Right now, I could be looking at never playing another round of golf.

By October of the same year, Dr. Houle had diagnosed that Dietz suffered from a cyst in his wrist and referred him to Dr. James Levi, also a board certified orthopedic surgeon. Dr. Levi confirmed Dr. Houle's diagnosis.

On October 9, 1989, Dietz wrote a letter to Allstate, providing additional medical bills, saying:

Regard your letter of August 18, 1989, I would like to bring you up-to-date. Since your letter I have had two more visits with Dr. Houle regarding my wrist and elbow. Last week he gave me the first cordisone [sic] shot. As of today, Monday, no sign of improvement. I have also continued with therapy upon his prescription. He still can not tell me what is wrong but it continues so that during last weeks shot a bunch of water came out which further demonstrates the problem. Maybe you people have an expert to go to???

. . . .

Although I am very much concerned about my future ability to play golf, considering the lack of progress made over 8 plus months, I would consider the possibility of a $20,000 settlement if done now.

On November 2, 1989, Allstate countered with an offer of $16,012.61. After further negotiation, Allstate agreed to $18,000 and sent Dietz a check and release for his signature. The check contained the following language in capital letters: "FINAL SETTLEMENT OF ANY AND ALL CLAIMS ARIS-

ING FROM BODILY INJURY AND PROPERTY DAMAGE CAUSED BY ACCIDENT ON 2/05/89." Dietz endorsed and negotiated the $18,000 check but did not sign and return the release.

On November 13, 1989, Dr. Levi surgically removed the cyst and performed a bone graft. After the operation, Dietz continued to have wrist pain and limited motion. Dr. Levi was unable to help him and referred him to Dr. John Madden, a specialist in hand surgery. Dr. Madden examined Dietz and diagnosed the true source of Dietz's pain as being a significant scapholunate gap, and a complete rupture of the scapholunate ligament, together with post traumatic osteoarthritis in the radiocarpal and carpal joints of the right wrist. This was the first time the true nature of Dietz's wrist problem was diagnosed.

On May 21, 1990, Dietz telephoned Allstate and asked them to reopen the claim because he needed to have a more serious operation performed on his wrist and permanent disability was possible. On May 24, 1990, Allstate advised Dietz that they had paid the $18,000 with the understanding that they were settling the claim.

In June 1990, Dr. Madden performed reconstructive surgery on Dietz's wrist. Dr. Madden anticipates the benefits of the surgery will last for a number of years but Dietz will require further surgery. It is Dr. Madden's opinion that the automobile accident caused the scapholunate ligament rupture and created the need for reconstructive surgery.

After Allstate refused to reopen the file, Dietz retained an attorney and filed this action against Lopez in superior court. Lopez filed a motion for summary judgment asserting the settlement constituted an accord and satisfaction. Dietz responded to the motion for summary judgment, asserting that the settlement agreement should be set aside because of mutual mistake. Lopez filed a reply in support of his motion for summary judgment. After oral argument on the motions, the trial court issued a minute entry granting the motion for summary judgment. Formal judgment was entered April 13, 1992. Dietz filed a timely notice of appeal on May 8, 1992.

Dietz argues that the settlement agreement should be set aside on the basis of a mutual mistake of fact as to the nature and extent of his injuries. He asserts that in reaching the settlement, both he and Allstate were unaware of the true nature and extent of his wrist injuries. Both assumed the problem was limited to a cyst when in fact there was serious injury which led to substantially increased medical costs. He insists this state of facts entitles him to relief from the settlement agreement.

In *Dansby v. Buck*, the seminal Arizona case on this issue, the supreme court held that a release may be avoided if at the time of the settlement, the parties did not contemplate injuries unknown either as to nature or extent, but the release would bar an action to recover merely for the consequences of known injuries. 92 Ariz. 1, 12, 373 P.2d 1, 8 (1962).

Dietz does not contest the defendant's assertion that, unless he is entitled to relief, his cashing of the settlement check constituted an accord and satisfaction of the controversy. Dietz argues this case falls within the general rule of *Dansby* because at the time the settlement was reached, neither he nor Allstate's adjuster was aware of the serious bone injuries of Dietz's wrist. Instead, both thought that his problems resulted from the cyst. This case is, in that respect, similar to *Dansby*, where the parties thought the plaintiff's knee was only bruised when in fact other more serious injuries were present. However, the particular facts of this case make the *Dansby* exception inapplicable.

The key to resolving this case is what the parties contemplated in reaching their settlement. In order for the unknown injury to relieve the plaintiff from the settlement, it must not have been within the parties' contemplation when the agreement was reached:

> [E]ven though a release expressly covers unknown injuries, it is not a bar to an action if it can be shown that such unknown injuries were in existence and were *not within the contemplation* of the parties when the settlement was agreed upon, but

that, if the parties did in fact intentionally agree upon a settlement for unknown injuries, such release will be binding.

*Dansby,* 92 Ariz. at 12, 373 P.2d at 8 (emphasis added). Just as the parties may reach such a settlement when they dispute liability, so may they settle if the claimant wishes to forego the possibility of a higher recovery in order to receive an earlier cash payment.

Dietz asserts that in settling the matter he did not intend to waive unknown claims. He cites his affidavit filed in support of his response to the motion for summary judgment: "At no time did I negotiate with Allstate regarding giving up claims for unknown injuries." Lopez argues that Dietz may not use his affidavit in this way to create an issue of fact to preclude the entry of summary judgment. In *Orme School v. Reeves,* the supreme court stated:

> [A]ffidavits that contain inadmissible evidence, that are internally inconsistent, that tend to contradict the affiant's sworn testimony at deposition, and similar items of evidence may provide a "scintilla" or create the "slightest doubt" and still be insufficient to withstand a motion for summary judgment. *See Anderson [v. Liberty Lobby,* 477 U.S. 242, 250–51, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986) ] (the mere existence of a scintilla of evidence is insufficient; there must be evidence on which the jury could reasonably find for plaintiff).

166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990) (citations omitted). Dietz's affidavit fits with *Orme School's* proscription. Dietz admits that Allstate's representatives warned him not to settle before he finished treatment. He admits he wrote various letters to Allstate and he does not deny that he meant what he wrote in them. On July 15, 1989, he informed Allstate that because his wrist was still hurting, he expected that he would incur as much in future expenses as he had up to that date. On August 21, 1989, he wrote, "No one seems to know the solution so at present the possibility of permanent disability is certainly a possibility." On October 9, he reiterated the fact that his wrist was not getting better, it was a mystery why his wrist was not improving, and he was concerned he would not be able to play golf again. Nonetheless, he "would consider the possibility of a $20,000 settlement if done now." Within a month, he settled for $18,-000.

Summary judgment must be granted "if the facts produced in support of the claim ... have so little probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced by the proponent of the claim...." *Orme School,* 166 Ariz. at 309, 802 P.2d at 1008. Under the facts adduced in connection with Lopez's motion for summary judgment, it is clear and unmistakable that Dietz contemplated more serious injury when he accepted the settlement and negotiated the check, and that he accepted the $18,000 in order to quickly settle the matter, rather than wait until his injuries were resolved. Reasonable minds could not differ on this point, and the court did not err in granting summary judgment. The judgment is affirmed.

LANKFORD, P.J., and GARBARINO, J., concur.