968 P.2d 582

**Cynthia D. EMMONS, Petitioner,**

v.

**SUPERIOR COURT of the State of Arizona, In and For the COUNTY OF MARICOPA, the Honorable Paul Katz, a judge thereof, Respondent,**

**WARNER–LAMBERT COMPANY, doing business through its Parke–Davis division, a foreign corporation, Larry Moeckel and Geraldine Moeckel, husband and wife, Real Parties in Interest.**

**No. 1 CA–SA 96–0352.**

Court of Appeals of Arizona,
Division 1, Department C.

Jan. 27, 1998.

Reconsideration Denied April 17, 1998.

Review Denied Dec. 7, 1998.

Teilborg, Sanders & Parks, P.C. by James A. Teilborg, Alison Lewis, Melinda Cekander, and Fennemore Craig, P.C. by Kenneth J. Sherk, Phoenix, for Petitioner.

Law Offices of Tracy A. Gromer by Tracy A. Gromer, and Ulrich, Kessler & Anger, P.C. by Paul G. Ulrich, Phoenix, and The Ranger Law Firm by Edward M. Ranger, Chris D. Soto, Scottsdale, for Real Parties in Interest.

## OPINION

PATTERSON, Judge.

¶ 1   Petitioner, Cynthia Emmons, entered into a written settlement agreement with the Real Parties in Interest (collectively Warner–Lambert).  Warner–Lambert filed a motion to set aside the settlement agreement on the grounds of mutual mistake of fact.  The trial court granted the motion, and Emmons filed

this special action seeking enforcement of the settlement agreement. We previously entered an order accepting jurisdiction and granting relief. This opinion explains that order.

## FACTS AND PROCEDURAL HISTORY

¶ 2　On May 18, 1991, Larry Moeckel, a district manager for the Parke–Davis Division of Warner–Lambert, conducted a products seminar for pharmaceutical representatives and physicians at the South Mountain Pointe Resort in Phoenix, Arizona. The seminar included several leisure activities, including a cocktail party.

¶ 3　After the seminar concluded, Moeckel was driving home when the company-owned car that he was driving and a car driven by Cynthia Emmons collided. Emmons suffered severe injuries and filed this lawsuit, alleging that Moeckel was negligent and that Warner–Lambert was directly and vicariously liable for her injuries.[1]

¶ 4　The case proceeded against Moeckel personally and against Warner–Lambert on the vicarious liability theory. The bifurcated trial commenced with the liability and compensatory damages phase, which was to be followed by the punitive damages phase. On Friday, September 20, 1996, the jury returned a $2.5 million compensatory damages verdict against Moeckel finding that Moeckel was acting in the scope of his employment at the time of the accident. Thus, Warner–Lambert would be subjected to the punitive damages phase of the trial, scheduled to begin on Tuesday, September 24, 1996.

¶ 5　On Monday, September 23, 1996, Warner–Lambert initiated settlement negotiations by hand-delivering an offer to Emmons' counsel. The offer provided in relevant part:

> Warner-Lambert is willing to pay the full verdict of $2,500,000.00 to settle all disputes between the parties. Although I believe that there are many appealable issues already in the record, Warner–Lambert would like to resolve the case without further court proceedings.
>
> *  *  *
>
> [T]here is every reason to expect that the appellate courts will reverse any award against the defendants or else remand the case for a new trial.

Emmons rejected this offer. Later that day Warner–Lambert faxed to Emmons and her counsel a "final offer of $5,000,000 to settle the case for all parties on all issues." At 4:00 p.m., September 23, 1996, Emmons accepted the offer and the accompanying confidentiality terms. The jury was dismissed and the punitive damages portion of the trial was cancelled.

¶ 6　Two days later, the trial court held a telephonic conference with all counsel and advised them that Exhibit 41, a letter to the court from defense counsel concerning the company's indemnification of Moeckel, had been mistakenly marked into evidence by the court clerk and sent into the jury room.[2]

¶ 7　A week after the telephonic conference, Warner–Lambert filed a motion to set aside the settlement agreement. Emmons simultaneously filed a motion to enforce the settlement agreement. The trial court

---

1. The trial court granted Warner–Lambert's motion for summary judgment concluding that it was not vicariously liable for Moeckel's negligence. The Arizona Supreme Court reversed that ruling, and the case proceeded to trial against Moeckel and Warner–Lambert. Warner–Lambert filed another motion for summary judgment seeking dismissal of the direct liability theory, which was granted.

2. The letter had been sent to the trial judge in response to expressed concern over a possible conflict of interest as the same law firm represented both Moeckel and Warner–Lambert. The letter explains that the arrangement was based on Warner–Lambert's automobile insurance program that insures its company cars at all times, regardless of their use. It stated in part that "the relationship between Warner–Lambert and the Moeckels was such that ... Warner–Lambert would stand behind the Moeckels in all respects in connection with this case," and that "regardless of the form of the verdict and judgment, [Warner–Lambert] will respond on the Moeckels' behalf to a final conclusion." The court precluded the document's admission into evidence, finding that "... evidence of such insurance will permit the jury to infer that Moeckel will not have to pay any judgment leading it to ignore issues of Warner–Lambert's liability and simply award a larger judgment."

granted Warner–Lambert's motion to set aside the settlement agreement finding "a mutual mistake of fact, i.e., the belief of the parties that the jury verdict was based upon the jurors' consideration of only the admitted evidence." Emmons filed this special action.

## JURISDICTION

¶ 8 The exercise of special action jurisdiction by this court is discretionary. *State ex rel. McDougall v. Superior Court,* 186 Ariz. 218, 219–20, 920 P.2d 784, 785–86 (App.1996). We exercise our discretion and accept jurisdiction because: (1) the trial court abused its discretion in ruling that the jurors' consideration of Exhibit 41 constituted a basis upon which to set aside the settlement agreement; *see Amos v. Bowen,* 143 Ariz. 324, 327, 693 P.2d 979, 981 (App.1984); *State ex rel. Romley v. Superior Court,* 184 Ariz. 409, 410, 909 P.2d 476, 477 (App.1995); (2) the grant of special action relief will effectively terminate the litigation; *see Polacke v. Superior Court,* 170 Ariz. 217, 219, 823 P.2d 84, 86 (App.1991); and (3) our disposition demonstrates the assumption, in a post-verdict settlement agreement, of the risk of mistake as to the range of appealable issues and their prospect of success.

## DISCUSSION

¶ 9 Emmons seeks enforcement of the settlement agreement. She contends that the trial court abused its discretion in setting aside the settlement agreement because it disposed of the underlying controversy, and because the validity of the agreement and its terms are not in dispute.

¶ 10 Warner–Lambert argues that the trial court properly set aside the settlement agreement because the agreement was voidable. It argues that a mutual mistake of fact existed as to a basic assumption on which the agreement was made, and that basic assumption had a material effect on the settlement offer. That basic assumption was that the jury deliberated only over properly admitted evidence. Warner–Lambert contends that they would not have offered to settle the case if they had known about the error.

¶ 11 Arizona's law has long favored compromise and settlement. *See Phillips v. Musgrave,* 23 Ariz. 591, 594–95, 206 P. 164, 165 (1922). Our supreme court stated in *Dansby v. Buck* that "[i]t has always been the policy of the law to favor compromise and settlement; and it is especially important to sustain that principle in this age of voluminous litigation...." 92 Ariz. 1, 11, 373 P.2d 1, 8 (1962). The validity of the long established principle set out in *Dansby* is questioned and tested by this challenge where it is argued that mutual mistake of fact obviates this settlement agreement.

¶ 12 Emmons argues that no mutual mistake of fact existed. She asserts that what Warner–Lambert characterizes as a mutual assumption, i.e., that Exhibit 41 was not seen by the jury, was no different than any other potentially appealable trial issue. Further, Emmons argues that the mistake was not as to a basic assumption of the contract, nor did it have a material effect on the agreed exchange of performances. Finally, Emmons argues that Warner–Lambert bore the risk of any mistake made as to the potential appealable issues.

¶ 13 Warner–Lambert argues that the settlement agreement was based on the jury's verdict, which was invalid. Warner–Lambert further argues the impropriety of the admission of Exhibit 41. We do not agree with Warner–Lambert that the validity of the settlement agreement depends on the legality of the admission of Exhibit 41.

¶ 14 Construction and enforcement of settlement agreements, including determinations as to the validity and scope of release terms, are governed by general contract principles. *Hisel v. Upchurch,* 797 F.Supp. 1509, 1517 (D.Ariz.1992). A contract may be rescinded on the grounds of mutual mistake. *Renner v. Kehl,* 150 Ariz. 94, 96–97, 722 P.2d 262, 264–65 (1986). The mistake must be as to a "basic assumption on which both parties made the contract." *Id.* at 97, 722 P.2d at 265 (*quoting* RESTATEMENT (SECOND) CONTRACTS § 152 comment (b)).

¶ 15 Additionally, the mutual mistake must have "such a material effect on the

agreed exchange of performances as to upset the very bases of the contract." *Id.* Restatement section 152 further requires that the mistake must not be one as to which the party seeking relief bears the risk. RESTATEMENT (SECOND) CONTRACTS § 152. A party seeking to rescind a contract based on mutual mistake must show by clear and convincing evidence that the agreement should be set aside. *Dietz v. Lopez,* 179 Ariz. 355, 356, 879 P.2d 2, 3 (App.1994).

¶ 16 Whether Exhibit 41 was before the jury when it rendered its verdict is not a basic assumption on which the settlement was formed. This agreement between Emmons and Warner–Lambert included the essential terms of the settlement. The parties agreed to an exchange of money to compensate Emmons for her injuries in return for a confidential release and an end to the controversy. The controversy settled need not be a valid claim. *See Brecht v. Hammons,* 35 Ariz. 383, 389, 278 P. 381, 383 (1929). Warner–Lambert settled this matter to avoid the potential harm to its name and reputation, as well as the mounting legal costs.

¶ 17 The fact that Exhibit 41 was inadvertently admitted into evidence does not go to the heart of the settlement. The jury's consideration or non-consideration of Exhibit 41 was neither the basis for nor a condition of the agreement or the agreed upon exchange of performances. During negotiations, Warner–Lambert set forth its reasons for entering the settlement and none of those factors has changed.

¶ 18 The reality of settlement is contrary to Warner–Lambert's notions. When parties settle a case during trial, any error which may have occurred, be it known, unknown or knowable, is relinquished as part of the settlement agreement. "It is the very consequences of these uncertainties which the parties seek to foreclose by settlement" rather than "to take their chances on their outcome." *Strange v. Gulf & South Am. Steamship Co., Inc.,* 495 F.2d 1235, 1237 (5th Cir.1974). Thus, the absence of any potential challenge to the validity of the jury verdict is not a basic assumption on which the parties relied.

¶ 19 Settling this controversy after verdict is analogous to the cases in which a claim was made for an injury and after the claimant signed a release, it was discovered that additional injuries existed. *See Dansby,* 92 Ariz. at 7, 373 P.2d at 5; *Hoopes v. Lamb,* 102 Ariz. 335, 337, 429 P.2d 447, 449 (1967); *Dietz,* 179 Ariz. at 357, 879 P.2d at 4. The supreme court stated in *Dansby* that "[p]arties may preclude recovery for all injuries, whether known or unknown, if it is their intention at the time to do so." *Dansby,* 92 Ariz. at 7, 373 P.2d at 5 (*quoting* 45 Am.Jur., Release, § 19). The *Dansby* court further recognized the question of intent as one of fact to be determined from surrounding circumstances. *Id.* at 8, 373 P.2d at 5.

¶ 20 In the present context the question may similarly be posed whether the parties intended by their settlement to preclude an appeal on any issue, whether known or unknown, as of the time of settlement. If such was their intention, there can be no rescision on the ground of mutual mistake. On this question in this case, there can only be one answer.

¶ 21 Warner–Lambert set out clearly in its offers all of the considerations for settling. Although its counsel stated, "I believe that there are many appealable issues already in the record.... There is every reason to expect that the appellate courts will reverse any award," Warner–Lambert nonetheless sought "to settle the case for all parties on all issues" "to avoid any further proceedings in court." The parties demonstrated an intention by their settlement to resolve all issues known or unknown. If Warner–Lambert entertained the assumption in entering such an agreement that there were no unknown issues concerning the jury deliberations, this assumption was a unilateral mistake not sufficient to set aside the settlement. *See Nationwide Resources Corp. v. Massabni,* 134 Ariz. 557, 565, 658 P.2d 210, 218 (App.1982) (holding that mistake of only one of the parties to a contract in expression of his agreement or as to subject matter does not affect its binding force and ordinarily affords no ground for its avoidance, or for relief even in equity). Emmons' position was clear that

**514**

Exhibit 41 had no part in its settlement negotiations.

¶ 22   Finally, the mistake must not be one as to which the party seeking relief bears the risk. RESTATEMENT (SECOND) OF CONTRACTS §§ 152 and 154. In this case, both parties bore the risk that the record might contain reversible errors. When Warner–Lambert made its offer, it indicated that it recognized appealable errors existed. When entering into the agreement, Warner–Lambert bore the risk that appealable errors unknown to it at the time would arise. Therefore, Warner–Lambert is not entitled to rescission.

¶ 23   Warner–Lambert did not show by clear and convincing evidence that the agreement should be set aside. Thus, the trial court erred in setting aside the settlement agreement.

### ATTORNEY'S FEES

¶ 24   Emmons requests attorney's fees and costs and interest from September 23, 1996, to the date the settlement amount is paid in full. *See* A.R.S. §§ 12–341.01 and 44–1201(A); *Betancourt v. Arizona Property & Cas. Ins. Fund,* 170 Ariz. 296, 299–300, 823 P.2d 1304, 1307–08 (App.1991); *Hays v. Fischer,* 161 Ariz. 159, 166, 777 P.2d 222, 229 (App.1989). In the exercise of our discretion, we grant that request. Counsel for Emmons is directed to comply with Rule 21(c), Arizona Rules of Civil Appellate Procedure, when submitting their requests for attorneys fees and costs.

### CONCLUSION

¶ 25   Accordingly, we reverse the trial court's orders setting aside the compromise and settlement of this matter. We also reinstate the compromise and settlement agreement as originally entered into by the parties on September 26, 1996.

FIDEL, P.J., and SULT, J., concur.