**RAMADA FRANCHISE SYSTEMS, INC.**

v.

**CAPITOL VIEW II LIMITED PARTNERSHIP VENTURE et al.**

**No. Civ. CCB–99–3686.**

United States District Court, D. Maryland.

Feb. 21, 2001.

Ellen R. Lokker, Hogan and Hartson LLP, Washington, DC, for Plaintiff.

Franklin T. Caudill, Richard M. Barnes, Goodell DeVries Leech and Gray, Baltimore, MD, for Defendants.

## *MEMORANDUM*

BLAKE, District Judge.

In 1999, plaintiff Ramada Franchise Systems, Inc., ("Ramada") filed suit against defendants Capitol View II Limited Partnership Venture ("Capitol View"), Joseph M. Della Ratta, and Frank A. Lucente, Jr., in the United States District Court for the District of New Jersey, seeking liquidated damages for the early termination of a Ramada franchise agreement. On November 22, 1999, the case was trans-

ferred by consent to this court. After Ramada filed its amended complaint on April 5, 2000, Capitol View filed an amended answer and counterclaim on July 13, 2000. The counterclaim contains three counts: Count I (Declaratory Judgment re Invalidity of Release); Count II (Breach of Contract); and Count III (Covenant of Good Faith and Fair Dealing).

Ramada filed a motion for summary judgment as well as a motion for protective order on August 30, 2000. On September 14, 2000, Capitol View filed a motion to compel responses to discovery requests. On February 2, 2000, this court held a hearing on the issues raised by these motions, which have been fully briefed. For the reasons that follow, Ramada's motion for summary judgment will be granted in part and denied without prejudice in part; limited discovery will be allowed.

## STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure provides that:

[Summary judgment] shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

A genuine issue of material fact exists if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir.1994). In making this determination, the evidence of the party opposing summary judgment is to be believed and all justifiable inferences drawn in his favor. *Halperin v. Abacus Technology Corp.*, 128 F.3d 191, 196 (4th Cir.1997) (citing *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505). The non-

moving party may not rest upon mere allegations or denials in his pleading, however, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *Allstate Fin. Corp. v. Financorp, Inc.*, 934 F.2d 55, 58 (4th Cir.1991). The "mere existence of a scintilla of evidence in support of the plaintiff's position" is not enough to defeat a defendant's summary judgment motion. *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505.

## BACKGROUND

Capitol View entered into a License Agreement ("the Agreement"), dated June 21, 1982, with Ramada Inns, Inc.,[1] to manage an upscale "Ramada Hotel" property in Oxon Hill, Prince George's County, Maryland. The Agreement was signed on December 14, 1983. (Pl.Mot.Summ.J., Ex. 1, License Agreement.) Sam Apostle and Jack Williamson of Ramada and Frank Lucente, Jr., of Capitol View negotiated the Agreement. (Def.Res., Ex. C, Aff. of Sam Apostle at ¶ 4; Ex. D, Aff. of Jack Williamson at ¶¶ 4–5; Ex. F, Dep. of Frank Lucente at 15.) The Agreement was signed by Mr. Apostle, Mr. Lucente and Joseph Della Ratta, a general partner of Capitol View. (Pl.Mot.Summ.J., Ex. 1.)

The Agreement and its addendum contained certain provisions common to Ramada's franchise agreements at the time. For example, Capitol View agreed to pay Ramada a royalty fee of 3% of its monthly gross room sales. (Pl.Mot.Summ.J., Ex. 2, Addendum to License Agreement at § 1.1.) The Agreement also provided that the franchise relationship could be terminated in twenty years from the date of the initial agreement. (*Id.*, Ex. 1, License Agreement, Twenty Years.) If the contract was prematurely terminated, liquidated damages of either two times the aggregate of the amounts due and payable to Ramada during the twelve months immediately preceding the effective date of the premature termination or a sum of

---

1. Ramada Inns, Inc. is a predecessor of the plaintiff Ramada Franchise Systems, Inc.

$20,000 dollars could be assessed. (*Id.*, License Agreement, Violation of Terms.)

There was one major amendment to the standard licensing agreement. Ramada agreed that in exchange for Capitol View's operation of the more exclusive "Ramada Hotel" franchise, Ramada would substantially reduce what was known as the "RINA" fee. The RINA fee took into account fees unrelated to the separate royalty fees. Under the Addendum, Capitol View was obligated to pay the 3% royalty fee and an additional 2.2% as the RINA fee, for a total of 5.2% of the monthly gross room sales. (*Id.*, Ex. 2, Addendum to License Agreement, § 1.2.) This agreement was unique—at the time, franchisees typically paid a 3.5% RINA fee (later increased to 4.5%).[2] Mr. Apostle could recall negotiating only one other out of eight hundred license agreements in a similar manner. (Def.Res., Ex. C, Aff. of Sam Apostle at ¶¶ 3, 6–7.) Mr. Apostle, Mr. Lucente, and Mr. Della Ratta signed the Addendum to the Agreement.[3]

After the Capitol View property opened in 1985, James Wellbeloved, Ramada's Director of Franchise Administration, determined the billing formula was to be 7.5%, based on a standard assessment of RINA fees at 4.5%. (Def.Res., Ex. G, Memo to System Controller, June 5, 1985.) Mr. Wellbeloved sent a copy of the license agreement to Jan Zachariasse, Vice President of Commercial Management Inc., Capitol View's authorized agent at the time. (Pl.Rep.Br., Ex. 11, Letter of June 24, 1985; Ex. 12, Letter of August 8, 1985.) The letter accompanying this license agreement enclosed the "current schedule A which reflects RINA Services Fee plus the 1% special assessment." (*Id.*, Ex. 12, Letter of August 8, 1985.)

On September 27, 1985, Mr. Zachariasse responded by stating that Capitol View's general partners objected to the assessment of standard fees for May, June and July of 1985, because the original contract called for a "total Franchise Fee of 6.2% [sic] of Gross Room Revenue." A copy of the letter was directed to Mr. Lucente, Mr. Della Ratta, and Mr. Apostle. (*Id.*, Ex. 13, Letter of September 27, 1985.) On November 7, 1985, Mr. Wellbeloved sent Mr. Zachariasse another letter, enclosing a copy of the new RINA fee structure. (*Id.*, Ex. 14, Letter of November 7, 1985.) There is no further evidence of any dispute about the appropriate fee. Indeed, Capitol View's December 1985 financial statement stated that the franchise agreement with Ramada required payment of monthly fees totaling 7.5% of gross room revenues. (Pl. Mot.Summ.J., Ex. 4, Financial Statement of December 31, 1985 at 7.)

Capitol View consistently made payments based on the standard payments of 7.5% rather than the negotiated fee of 5.2% (or 6.2%) for a period of over ten years, from 1986 to 1997. Capitol View now claims that it overpaid Ramada an estimated $613,122 dollars over the history of the contract, a calculation based on the 5.2% formula contained in the Addendum. (Def.Res., Ex. J, Report of Robert J. Callens at 5–7.)

Other disputes arose in the 1990s. Capitol View actively disputed the creation of two additional Ramada units in Prince George's County in 1992 and 1993. (Pl. Mot.Summ.J., Ex. 6, Letter of June 13, 1997.) In 1996, Capitol View protested the redesignation of its unit from a Ramada Hotel to a Ramada Inn. (*See* Am.Compl. at ¶ 5.) In September 1997, the parties en-

---

2. According to Mr. Apostle, Capitol View also was expected to pay the subsequent 1% surcharge. (Def.Res., Ex. C, Aff. of Sam Apostle at ¶¶ 8–9.)

3. After stating the specific amounts, the Addendum continued "or such additional sum or sums as shall from time to time be required by Licensor, but only upon the recom-

mendation of the Executive Committee of Ramada International Association ("RINA") ... and only upon approval of said recommendation in the ordinary course of business by the Executive Committee of Licensor." (Def.Res., Ex. B, Addendum to License Agreement.)

tered into an Amendment to the License Agreement ("the Amendment") under which Ramada agreed to a 1% percent reduction in the royalty fee for a period of one year. (Def.Res., Ex. H, Amendment to License Agreement.) Significantly, as a condition of the Amendment, Capitol View released Ramada from "any and all claims and causes of action whatsoever arising prior to and through the date of this Amendment relating to the License Agreement or the Unit." *Id.*

Capitol View remained dissatisfied with the franchise relationship even after the Amendment was finalized. (Def.Res., Ex. E, Letter of May 4, 1998.) The relationship between Ramada and Capitol View continued to deteriorate, and on December 10, 1998, Capitol View advised Ramada that it would terminate the License Agreement on December 31, 1998. (Pl.Mot. Summ.J., Ex. 8, Letter of Dec. 10, 1998.) This lawsuit followed.

## ANALYSIS

Ramada seeks summary judgment on Capitol View's counterclaims. As a preliminary matter, it appears that some of these counterclaims are barred by the statute of limitations.

This case was transferred from the United States District Court for the District of New Jersey to the District of Maryland, pursuant to 28 U.S.C. § 1404(a). (*See* Def.Res., Ex. K.) If a case has been transferred, a district court will apply the law of the transferor forum, including that forum's choice of law standards. *See Ferens v. John Deere Co.,* 494 U.S. 516, 519, 110 S.Ct. 1274, 108 L.Ed.2d 443 (1990). New Jersey courts will uphold the agreement of the parties to be governed by the laws of another state if it does not violate New Jersey's public policy. *See North Bergen Rex Transport, Inc. v. Trailer Leasing Co.,* 158 N.J. 561, 730 A.2d 843, 847 (1999). In this case, the parties have agreed that the law of Arizona governs the substantive interpretation and enforcement of the License Agreement.

Although the parties have chosen Arizona as the source of applicable substantive law, New Jersey's statute of limitations will apply because Ramada is a resident of New Jersey. *See Dent v. Cunningham,* 786 F.2d 173, 176–77 (3rd Cir. 1986). New Jersey's statute of limitations for contract actions is six years. *See* N.J.Stat.Ann. § 2A:14–1. In its counterclaim, initially filed on March 24, 2000, Capitol View alleged that Ramada breached the terms of the contract, as well as the covenant of good faith and fair dealing, by overcharging Capitol View for royalty fees, by building additional franchises in 1992 and 1993, and by changing the designation of the property in question from Ramada Hotel to the less prestigious Ramada Inn in 1996. New Jersey's statute of limitations, however, bars any claims that accrued before March 1994, leaving only two remaining: (1) the alleged overpayments that accrued after March 1994; and (2) the changed designation of the property in 1996.

Ramada relies on the 1997 Amendment, which releases it from "any and all claims and causes of action whatsoever," as a bar to these remaining counterclaims. Capitol View argues that the release should be rescinded, because of either fraud or mutual mistake. Under Arizona law, a release may be rescinded when there is a mutual mistake of material fact concerning "an essential part and condition of the contract." *Renner v. Kehl,* 150 Ariz. 94, 722 P.2d 262, 265 (1986) (quoting *Mortensen v. Berzell Investment Co.,* 102 Ariz. 348, 429 P.2d 945, 947 (1967)). In *Dansby v. Buck,* 92 Ariz. 1, 373 P.2d 1, 6 (1962), the Arizona Supreme Court noted that a release would be set aside "if it is clearly established that the release was entered into under a mutual mistake as to a substantial injury, existing but unknown at the time and not taken into consideration." The party asserting mistake has the burden of estab-

lishing mistake of fact by clear and convincing evidence. *Dietz v. Lopez,* 179 Ariz. 355, 879 P.2d 2, 3 (1994).

In this instance, Capitol View contends the overpayments to Ramada were an unknown injury that affected an essential condition of the release—namely that the reduction of 1% agreed to in the Amendment was based on the incorrect assumption that the payment rate was in fact 7.5% rather than the 5.2% originally agreed to by the parties. In support of this position, Mr. Della Ratta explains that when he signed the 1997 Addendum, he "did not contemplate that Ramada had been overbilling Capitol View for franchise fees." (*See* Def.Res., Ex. 5, Aff. of Joseph Della Ratta at ¶ 8.)

As Mr. Della Ratta also acknowledges, however, he signed the original Addendum, which set the 5.2% rate. (*Id.* at ¶ 2.) In September 1985, Mr. Zachariasse, the authorized agent of Capitol View, reviewed the Licensing Agreement and its Addendum with both Mr. Della Ratta and Mr. Lucente, and was instructed by them "to calculate payment of Royalty Fees and RINA assessments for May, June and July according to the original contract which was executed and ratified by Joseph M. Della Ratta and Frank Lucente, Jr., General Partners and Sam Apostle." (Pl.Rep. Br., Ex. 13, Letter of September 27, 1985.) Thereafter, the billing figure of 7.5% was openly charged by Ramada and paid by Capitol View. Accordingly, the alleged overbilling was not unknown to Mr. Della Ratta at the time of the negotiations in 1997, nor had it been fraudulently concealed by Ramada. The release is valid and bars Capitol View's claims.

■■ Capitol View contends that even if it released its affirmative claims and causes of actions, the equitable doctrine of recoupment is still available to limit the amount of damages recoverable by Ramada. Under the doctrine of recoupment, a judgment may be reduced or eliminated, even where the claim cannot be a basis for affirmative relief. *Egan–Ryan Mechanical Co. v. Cardon Meadows Development Corp.,* 169 Ariz. 161, 818 P.2d 146, 156 (1991). Capitol View argues that the release does not bar application of the doctrine of recoupment, because it is essentially defensive in nature. While courts have acknowledged the defensive nature of recoupment, however, it has also been understood as a cross action where "a defendant is able to meet a plaintiff's claim with a countervailing claim that arose out of the same transaction." *Newbery Corp. v. Fireman's Fund Insurance Co.,* 95 F.3d 1392, 1399 (9th Cir.1996) (citations omitted); *W.J. Kroeger Co. v. The Travelers Indemnity Co.,* 112 Ariz. 285, 541 P.2d 385, 388 (1975) (recoupment is a "claim of the defendant.") The broad language of the amendment, releasing "any and all claims and causes of action whatsoever" supports Ramada's argument that every kind of claim was released, including the equitable one of recoupment. In any event, even if the release were not sufficiently broad to cover the defense of recoupment, Capitol View's claim for overbilling has been waived, as discussed below in connection with the issue of liquidated damages.

■ In the event of premature termination, the License Agreement provides for liquidated damages of either two times the amount due and payable to Ramada for royalty and RINA fees for the twelve months preceding termination or $20,000 dollars, whichever is larger. Ramada argues it is entitled to liquidated damages of $293,982 dollars or twice the amount of payments ($146,991) owed by Capitol View to Ramada as of December 31, 1998. (*See* Pl.Mot.Summ.J., Ex. 3, Decl. of Wayne Miller at ¶ 6.) Capitol View asserts in response that the liquidated damages clause is not enforceable because Ramada breached its duties under the contract by overbilling Capitol View for franchise fees.

■ Assuming for the sake of argument that Ramada breached the contract by charging a 7.5% franchise fee, this breach has been waived. Under Arizona law, a party to a contract can waive a

breach by the other party by permitting the breaching party to continue performance. *See Pima Farms Co. v. Fowler,* 32 Ariz. 331, 258 P. 256, 259 (1927); *Northern Arizona Gas Serv., Inc. v. Petrolane Transport, Inc.,* 145 Ariz. 467, 702 P.2d 696, 706 (1984). Arizona courts have defined waiver as "either the express, voluntary, intentional relinquishment of a known right or such conduct as warrants an inference of such an intentional relinquishment. Waiver by conduct must be established by evidence of acts inconsistent with an intent to assert the right." *American Continental Life Ins. Co. v. Ranier Construction Co., Inc.,* 607 P.2d 372, 374 (1980) (citations omitted). Although Capitol View never expressly waived its right to insist on a fee of 5.2%, its continued payment of the higher rate of 7.5% over a period of many years, together with an acknowledgment of that rate in its financial statement, amounts to conduct demonstrating an intentional relinquishment of any contractual right it may have had to the 5.2% rate. Accordingly, the alleged overbilling by Ramada has been waived and does not provide a basis to defeat enforcement of the liquidated damages provision.

Under Arizona law, however, a liquidated damages clause should be closely examined to ensure that it is not an unenforceable penalty that seeks "[p]unishment of a promisor for having broken his promise." *Pima Savings and Loan Assoc. v. Rampello,* 168 Ariz. 297, 812 P.2d 1115, 1117 (1991) In order to ensure that a liquidated damages clause is not an unenforceable penalty, Arizona courts examine whether: (1) the amount fixed in the contract is a reasonable forecast of just compensation for the harm caused by the breach; and (2) the harm caused by the breach is one that is incapable or very difficult of accurate estimation. *Id.* at 1118. In this instance, Ramada has offered the declaration of C. Wayne Miller, the current Vice President of Franchise Administration for Ramada Systems, Inc., to demonstrate that the liquidated damages clause is a reasonable forecast of just compensation and that the harm caused by Capitol View's breach is incapable of accurate estimation. (Pl.Mot.Summ.J., Ex. 3, Decl. of Wayne Miller at ¶ 7.)

Mr. Miller offers no supporting evidence to supplement his statements, however, nor has Capitol View had the opportunity to determine the basis for these assertions. The amount sought by Ramada represents over one half of the time left to run on the twenty year contract. Capitol View has satisfied its responsibilities to inform the court of the need for additional time to conduct discovery in order to properly oppose Ramada's estimation of liquidated damages. *See* Def.Opp. at 8; *HealthSouth Rehabilitation Hosp. v. American National Red Cross,* 101 F.3d 1005, 1009 (4th Cir.1996) (summary judgment should not be granted when opposing party needs additional time to complete discovery and properly respond to the motion.) Therefore, summary judgment on Ramada's claim for damages will be denied without prejudice, and Capitol View will be given additional time to conduct discovery on issues relevant to the enforceability of the liquidated damages clause of the License Agreement.

A separate Order follows.

### *ORDER*

For the reasons stated in the accompanying Memorandum, it is hereby **OR-DERED** that:

1. The plaintiff's motion for summary judgment is **GRANTED** as to Counts I–III of the amended counterclaim, and **DE-NIED WITHOUT PREJUDICE** as to the claim for liquidated damages;

2. The plaintiff's motion for protective order is **GRANTED,** except as to matters relevant to the enforceability of the liquidated damages clause and the amount sought thereunder;

3. The defendants' motion to compel is **DENIED;**

4. The parties shall have until June 1, 2001 to conduct additional discovery concerning the liquidated damages clause, consistent with the accompanying Memorandum;

5. The case shall be referred for a mediation/settlement conference before a United States Magistrate Judge; and

6. Copies of this Order and the accompanying Memorandum shall be mailed to counsel of record.